THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SAMUEL PUENTE, Defendant-Appellant.

First District (5th Division) No. 82—2358

Opinion filed June 22, 1984.

William P. Murphy, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Jack M. Bailey, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant, Samuel Puente, appeals from his conviction and sentencing, following a bench trial, for the offenses of attempted murder, armed violence and aggravated battery. He raises four issues for review: (1) whether his sixth amendment right to confront witnesses was violated; (2) whether he was proven guilty beyond a reasonable doubt; (3) whether he was denied effective assistance of counsel; and (4) whether the court erred in imposing sentence. We affirm.

Marie Hernandez testified that on December 25, 1981, she lived at 4300 West 25th Street in Chicago with her husband, Lupe Hernandez, her niece, Michelle Puente, and her son. At about 2 p.m. on that date her brother, the defendant, came to her home. He gave her a small package and told her that it contained $2,000. Defendant then went to lie down in one of the bedrooms and slept until about 6:30 p.m. At that time, at defendant's request, Marie returned the package to defendant and then left the house with other family members. Only Lupe and defendant remained in the house. Marie returned about 11 p.m. accompanied by her three sons, her daughter-in-law, her 2½-year-old grandchild and her niece, Michelle. Shortly thereafter her sons and daughter-in-law left the house but Marie's grandchild and Michelle remained and stayed in the kitchen. Defendant then again requested that Marie return the money. When she told him that she had given it to him at 6:30 p.m. he started to argue with her. Lupe said that he didn't want defendant to argue with his wife and threatened to call the police unless defendant left the house. Marie told Lupe not to call the police and he then hung up the telephone. Marie testified that at that time she saw nothing in either defendant's or her husband's hands. She turned her back to go into the dining room and then heard a shot. When she heard the shot she ran to her bedroom and locked herself in and called the police. From the bedroom she heard more shots but did not know how many.

The witness testified that her husband had been hospitalized since that day. He was wounded in the head, neck and stomach. He is partially paralyzed and drags his feet when he walks. His speech is slurred and he has suffered some memory loss. At the time of trial the hospital bills totaled over $300,000. Marie also testified that her husband did not own a gun or keep one in the house.

Michelle Puente testified that she is 18 and has lived with Lupe and Marie Hernandez for seven years. She is their godchild and calls them father and mother. Defendant is her uncle. Michelle stated that on the day in question defendant came to the Hernandez house, gave

Marie Hernandez a package which he said contained $2,000 and asked her to hold it for him. Marie put the package in a drawer and returned it to defendant, upon his request, before leaving the house at 6:30 p.m. The witness testified that later that evening she was in the doorway of the kitchen, about 10 steps away from defendant and Lupe when they began arguing. Defendant kicked Lupe and Lupe then grabbed defendant's foot. Defendant then pulled out a gun. Michelle stated that defendant and Lupe struggled over the gun and she saw defendant's hand on the gun just before she heard the first shot. She recalls hearing two shots fired. When Lupe fell to the floor she screamed and ran for the back door. Defendant then pointed the gun at her face and said, "You are not going anywhere. You want me to kill you?" The witness then stated that defendant stood over Lupe as he was lying on the floor, pointed the gun at him and said, "I'm going to put you to sleep." Michelle then ran out of the house and remained outside until the police arrived.

David Bocian, a police officer, next testified that he and his partner entered the Hernandez home in response to a call about 11:15 p.m. on December 25, 1981. He pointed to his own gun and asked a child, approximately two to three years old, where the man with the gun was. The child led him to the stairs going to the second floor and pointed up the stairway. As the officers went up the stairs, defendant was there, pointing a gun at them. They retreated downstairs, announced that they were police officers and ordered defendant to throw down his gun. Defendant did so upon the second request and was placed under arrest.

The .38 caliber revolver recovered from defendant was introduced into evidence along with six live cartridges and three spent casings. The spent casings and two live rounds were recovered from the cylinder of the revolver. The other four live rounds were recovered from the floor of the kitchen and from defendant's pockets. The police officer did not know whether Lupe's fingerprints were on any portion of the gun.

It was stipulated that, if called, Drs. Kaplan and Richardson would testify that 1,000 pages of medical history concerning Lupe Hernandez was true and accurate and that they had performed a series of operations on Lupe including operations on his brain and on portions of his body in the area of his stomach and that the nature and extent of Lupe's injuries was extremely serious.

Defendant testified in his own behalf. He stated that he went to his sister's house on December 25, 1981, to pick up a package he had left there. He had a conversation with his sister and then asked her

for his belongings—a leather pouch containing a .38 caliber handgun, some money, the title to a truck and some other papers. He took the pouch and his sister left to go to the store. He finished several drinks, then fell asleep at the table. He testified that when he awoke the pouch was open, the money was gone and Lupe was standing by the table. They argued over who had taken his money and Lupe told him to get out of the house. Defendant said that Lupe then pulled a gun which had been in the pocket of defendant's jacket hanging on the back of his chair. The two struggled for the gun. Defendant stated that he was drunk and does not remember exactly, but that the gun went off two or three times. Defendant then took the gun from Lupe and went up into the attic. He denied pointing the gun at the police officers and said that he surrendered his gun upon their request. He denied being the aggressor at any time. Defendant said that neither the three-year-old child nor Michelle was in the kitchen when the shooting occurred. He also denied that Marie was home at that time and stated that she had gone to the store. Defendant denied pointing the gun at Michelle and stating that he would kill her.

After finding defendant guilty on all charges and that the convictions for aggravated battery merged into the convictions for attempt murder and armed violence, the court then imposed sentence of 40 years' imprisonment under the extended-term statute for attempt murder and armed violence. Defendant appeals.

OPINION

■ The first issue is whether defendant's sixth amendment right to confront witnesses was violated. It is undisputed that the right granted to an accused by the sixth amendment to confront the witnesses against him is a fundamental right essential to a fair trial. (*Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065.) Such right includes both the opportunity to cross-examine and the occasion for the trier of fact to assess the credibility of the witness. *Barber v. Page* (1968), 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318.

Defendant here asserts that Lupe Hernandez, as the "victim of the alleged attempt murder" was, in fact, the ultimate witness against him. He argues, therefore that the State's failure to call Hernandez as a witness or to establish his unavailability for trial violated his right of confrontation.

We find no merit in this contention. Defendant's argument that Hernandez was a witness against him solely because he was the victim of the shooting here at issue is specious. It is not disputed that

Hernandez was shot as a result of an altercation with defendant. However, he was not a sworn witness in the instant trial nor was his testimony introduced into evidence in any form. (*Cf. Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (testimony taken at a preliminary hearing was introduced at trial).) He, therefore, was not a "witness" against defendant; accordingly, defendant had no constitutionally guaranteed right to cross-examine him.

■ Moreover, the State is not required to call every witness to a crime in order to sustain its burden of proof. (*People v. Nowak* (1970), 45 Ill. 2d 158, 168, 258 N.E.2d 313; *People v. Zehr* (1982), 110 Ill. App. 3d 458, 442 N.E.2d 581.) The State was, therefore, under no duty to call Lupe as a witness if it could meet its burden of proof without his testimony. Further, the witness in question was known to defendant and could have been called by him to testify. Having failed to do so, defendant cannot claim prejudice by the State's failure to call him. *People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.

■ Defendant also asserts that a negative inference may be drawn from the unexplained absence of an apparently available witness. "While such an inference is sometimes proper (*People v. DiVito* (1966), 66 Ill. App. 2d 282, 214 N.E.2d 320) it has not been invoked where *** an eyewitness testified directly as to the event, and [her] testimony is 'clear and convincing' and 'complete in all respects.' *People v. Graham* (1970), 127 Ill. App. 2d 272, 277, 279, 262 N.E.2d 243, 246." (*People v. Rowe* (1977), 45 Ill. App. 3d 1040, 1045-46, 360 N.E.2d 436.) This is such a case. Any negative inference drawn from the absence of Lupe Hernandez as a witness could properly be abated by the testimony of Michelle Puente. Accordingly, we find no violation of defendant's right of confrontation.

■ The second issue raised is whether defendant was proven guilty beyond a reasonable doubt. In support of his contention that he was not proven guilty beyond a reasonable doubt defendant asserts, first, that the State failed to prove all the material and essential facts constituting the crimes he was charged with and, second, that the court failed to consider his testimony that he had acted out of self-defense.

Resolution of this issue turns on the credibility of the witnesses. It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be accorded their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) Where the evidence is merely conflicting the reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733;

*People v. Clark* (1964), 30 Ill. 2d 216, 195 N.E.2d 631.) A criminal conviction will not be reversed unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.

■ It is unnecessary to repeat the testimony of all the witnesses at trial. The testimony of a single witness, if credible, is sufficient to sustain a conviction even where that testimony is contradicted by the accused. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) The trial court here heard the witnesses' accounts of the shooting and made its determination as to credibility. The court was under no duty to accept defendant's testimony as true where other conflicting testimony was presented. Our review of the record discloses ample evidence to support the judgment of the trial court. We are, therefore, unable to say that defendant was not proven guilty beyond a reasonable doubt.

■■ ■ The third issue is whether defendant was denied effective assistance of counsel. Our supreme court recently held that the standard for determining when the inadequacy of trial counsel entitles a defendant to a new trial is whether the incompetence produced substantial prejudice to the defendant without which the result would probably have been different. (*People v. Royse* (1983), 99 Ill. 2d 163, 169-70, 457 N.E.2d 1217; *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) Effective assistance means competent, not perfect, representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 311, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) Matters involving the exercise of judgment, trial tactics or strategy will not be reviewed by this court (*People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213), even where appellate counsel or the reviewing court might have handled the case differently. (*People v. Smith* (1980), 81 Ill. App. 3d 764, 773, 401 N.E.2d 1017.) Furthermore, a defendant who charges that his counsel was incompetent must establish both the actual incompetency and the resultant prejudice and may not rely on mere conjecture or speculate as to the outcome of the case had the representation been of a higher quality. *People v. Hills* (1980), 78 Ill. 2d 500, 505-06, 401 N.E.2d 523.

■ Defendant here contends that he was denied effective assistance of counsel because of (1) the brevity and content of the opening statement; (2) his counsel's failure to cross-examine any of the witnesses on the issue of self-defense; (3) counsel's stipulating to over 1,000 pages of medical records concerning the victim's injuries which resulted from the shooting here at issue; and (4) counsel's failure to object to the State's failure to explain the unavailability of the victim

as a witness. Making or waiving an opening statement has been held to be a question of judgment in strategy (*People v. Georgev* (1967), 38 Ill. 2d 165, 169, 230 N.E.2d 851, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202) and therefore will not be reviewed. (*People v. Gallardo* (1983), 112 Ill. App. 764, 445 N.E.2d 1213.) Thus the making of a brief opening statement and the content thereof cannot be said to indicate professional incompetence. Similarly, we find the extent to which witnesses are cross-examined to be a matter of strategy and, therefore, beyond the scope of our review. A stipulation to the contents of voluminous medical records was also a matter within the judgment of trial counsel, who may have considered such stipulation preferable to the possibility of having such evidence emphasized by lengthy and detailed testimony regarding the victim's injuries. Finally, defendant maintains that counsel's failure to have the State explain the unavailability of the victim evidences incompetence. He infers that, if called to testify, the victim would have supported his own assertion of self-defense. Upon review, the record discloses that the State represented to the trial court that the victim would encounter transportation difficulties in appearing before the trial court due to paralysis and other physical conditions resulting from the shooting. Marie Hernandez testified to the victim's physical condition and to his loss of memory due to his injuries. As stated earlier in this opinion we do not believe the State was under any obligation to produce, as a witness, the victim of this shooting but, in any event, we find that the decision not to require evidence that, due to the severity of his injuries, the victim was absolutely incapable of appearing before the trial court was within the judgment of trial counsel. Moreover, the contention that the victim's testimony would exculpate defendant is no more than speculation on defendant's part for which we find no support in the record. Regarding all of the above assertions of incompetence, defendant fails to show a resultant prejudicial effect without which the outcome of the trial would probably have been different. (See *People v. Moore* (1981), 102 Ill. App. 3d 651, 658-59, 429 N.E.2d 1312.) Accordingly, on the record here presented we are unable to find that defendant was denied effective assistance of counsel.

The final issue for review is whether the sentence imposed upon defendant was improper. The sentencing judge is vested with wide discretion "in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case." (*People v. La Pointe* (1982), 88 Ill. 2d 482, 492, 431 N.E.2d 344.) The trial court is normally the proper forum for determination of a suitable sentence and its decision will not be disturbed absent an abuse of dis-

cretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

The statute provides that the sentence for the crime of attempted murder, for which defendant was convicted, is the sentence for a Class X felony. (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(c)(1).) An extended term of not less than 30 nor more than 60 years may be imposed if the factors in aggravation set forth in section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2) are found to be present. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(2).) Such factors include a finding by the court that "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).) The statute further provides that the court shall, at the sentencing hearing, consider evidence and information in aggravation and mitigation and shall specify on the record the particular factors that led to its sentencing determination. Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1.

 Defendant argues that the court failed to give due regard to the mitigating factors of his case: his age (49), stable employment record and minimal prior criminal record. He asserts that the analysis that must accompany each sentencing determination is summarized by our supreme court's statement that "[i]n this State, the spirit and purpose of the law are upheld when a sentence reflects the seriousness of the offense and *gives adequate consideration to the rehabilitative potential of the defendant.*" (Emphasis added.) (*People v. Carlson* (1980), 79 Ill. 2d 564, 587, 404 N.E.2d 233.) Defendant contends, therefore, that in imposing a 40-year sentence the trial court abused its discretion.

The record does not support that contention. Ignored by defendant is the supreme court's statement which immediately preceded the above-quoted language. There the court stated: "This court will not disturb a sentence imposed by the trial court unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose." (*People v. Carlson* (1980), 79 Ill. 2d 564, 587, 404 N.E.2d 233.) In the instant case the trial judge heard factors in aggravation and in mitigation in accordance with the statute. He then made a specific finding that the acts of the defendant were "heinous, brutal and outrageous" and, on that basis, imposed an extended-term sentence. Nothing in the record indicates that the court failed to consider the rehabilitative potential of the defendant. The term of the sentence imposed was well within the allowable range and was not the most severe allowed by law. Based upon this record,

we cannot say that the sentence imposed constitutes a great departure from the fundamental law or its spirit and purpose and, accordingly, we are unable to say that the imposition of such sentence was an abuse of discretion.

■■ The State requests that this court grant costs in the amount of $50 for defending the appeal and $25 for oral argument. Under the authority of section 8 of "An Act concerning fees and salaries ***" (Ill. Rev. Stat. 1981, ch. 53, par. 8) and *People v. Nicholls* (1978), 71 Ill. 2d 166, 174, 374 N.E.2d 194, we assess defendant $50 in costs for the State's defense of this appeal and hereby incorporate it as part of this judgment. We deny the State's request for an additional $25 for oral argument. Our denial is predicated upon our interpretation of the *per diem* provision of the statute as referring to an actual trial in the circuit court, not to an oral argument on appeal. See *People v. Hall* (1983), 117 Ill. App. 3d 788, 805-06, 453 N.E.2d 1327.

For all the foregoing reasons we affirm the judgment of the circuit court.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.