THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NANCY SCHMIDT, Defendant-Appellant.

First District (3rd Division)   No. 85—2728

Opinion filed April 6, 1988.—Rehearing denied May 9, 1988.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr. and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a bench trial, defendant, Nancy Schmidt, was found guilty of possession of more than 500 grams of cannabis with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 705(e)) and sentenced to four years' imprisonment. She appeals, contending that the trial court erred in denying her motion to suppress evidence seized from the backyard of her home, that she was not proved guilty beyond a reasonable doubt, and that she was denied the effective assistance of counsel. The State contends that consideration of these matters on appeal was waived by defendant's failure to raise them in a post-trial motion before the trial court. We affirm.

On September 7, 1984, at approximately 4:30 p.m., Officer James Couch was at a nearby business establishment on an unrelated matter when he observed several large plants growing in defendant's yard located two doors away. From his vantage point he could see the tops of 16, six-foot-high plants which he believed to be cannabis. At that time he had been on the police force for 15 years and had observed marijuana growing on about one dozen occasions. In each instance subse-

quent analysis demonstrated that the plants were cannabis. Upon observation of the plants in defendant's yard, Officer Couch reported the matter to his supervisor and checked the home periodically to determine whether the occupants had returned. At approximately 9 p.m. a van was observed in the driveway and lights on in the home. Officer Couch reported this development, and he and four other officers drove to defendant's home. Upon arrival, Officer Couch and another officer went to the rear to determine whether the plants were still there, and two other officers were admitted to the home by defendant's husband. These officers immediately advised defendant that she was under arrest for the production of cannabis and advised her of her constitutional rights. When Officer Couch and his partner entered the house after checking the plants, defendant asked if they intended to arrest her husband. The officers answered affirmatively, and defendant replied that she alone had planted and nurtured the marijuana and that her husband should not be blamed or charged with regard to the plants because he took no part in raising them. At this point defendant was taken to the police station, and Officer Couch and his partner returned to the backyard.

The patch of marijuana was located in a rear corner of the lot and was partially bordered by a hedge, but neither the patch nor the yard was fenced. The yard contained grass and other green plants and weeds. However, the marijuana patch was weeded, contained no other variety of plants, was separated from the remainder of the yard by a border of logs laying on the ground, and, unlike the remainder of the yard, had been recently watered. The patch contained 21 plants, with one measured at nearly 11 feet tall, 15 were at least six feet in height and five were less than three feet in height. These plants were photographed and uprooted. In bulk they weighed 33.5 pounds and were seized by police. The leaves of the tallest plant and the five smallest plants were subsequently peeled off and sent to the laboratory for analysis. These leaves weighed 842.2 grams and upon analysis were found to be cannabis.

In a two-count information defendant was charged with possession of more than 500 grams of marijuana with intent to deliver (count 1) and with possession of more than 500 grams of marijuana (count 2). She was represented by privately retained counsel, who, prior to trial, filed a motion to suppress evidence taken from her property without authorization or warrant. During the hearing on this motion, defense counsel elicited testimony from Officer Couch that the evidence was seized from defendant's yard and that it was possible that he had time to get a search warrant between the time of observation and time of

seizure, but that no warrant was obtained. The trial court ruled that it was unnecessary for the officers to obtain a warrant under the circumstances and denied the motion to suppress. Violation of the fourth amendment was again raised by defense counsel when the State sought admission of the photographs of the marijuana patch and during final argument, but the trial court's ruling did not change.

The defense attorney called Officer Couch during the hearing on the motion to suppress and subjected him to direct and redirect questioning. However, he did not cross-examine this officer during the trial and likewise did not cross-examine another officer who testified. No defense evidence was presented. During final argument the following remarks were made:

> "[DEFENSE COUNSEL]: There is no evidence of the intent to deliver. If there was any use made, it was for use between both Nancy and whomever else she wished to make a gift of any of it. So to get down to Count 2 [possession charge]—
>
> THE COURT: Do you want to make a comment about Count 2, counsel?
>
> [DEFENSE COUNSEL]: I have no comment about Count 2. They seem to have proven Count 2.
>
> I would only make this observation: The possession of cannabis becomes a question of whether or not she had anything in her possession. It's out in her garden and I didn't bring with me the 4th Amendment. In their house and any surrounding property is excluded."

The trial court found defendant guilty of count 1 (possession with intent to deliver) and that count 2 (possession) merged into count 1. During the sentencing phase of the proceeding, defense counsel vigorously argued for probation and a drug dependency program; however, because of defendant's prior record, which included several periods of probation and a failed attempt at drug rehabilitation, defendant was sentenced to four years' imprisonment.

After sentencing, defendant's private counsel withdrew and the public defender was appointed. The trial court ordered the public defender to discuss the matter with defendant and to file a post-trial motion, if appropriate. No oral or written post-trial motion was ever presented.

■ The State contends that the issues defendant raises on appeal were waived by the failure to file a post-trial motion. In general, the failure to raise an issue in a written motion for a new trial constitutes a waiver of such issue, and it cannot be urged as a ground for reversal on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176; *People v. Pickett*

(1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Moreover, this rule is applicable to constitutional questions as well as to other issues. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) To ameliorate the severity of the waiver rule Supreme Court Rule 615(a) allows the reviewing court to consider plain errors or defects appearing on the record which affect substantial rights of the defendant although not brought to the attention of the trial court. (107 Ill. 2d R. 615(a).) Plain error is an error which deprived the defendant of a fair and impartial trial or any substantial error which occurs in cases where the evidence is closely balanced. (*People v. Lamparter* (1977), 56 Ill. App. 3d 823, 371 N.E.2d 997.) As hereinafter demonstrated, we find no plain error on the record before us.

Defendant contends that the trial court erred in denying her motion to suppress evidence obtained from the seizure of the plants growing in her backyard without a search warrant. She argues that the backyard was part of the classic curtilage of her home and was therefore entitled to the same fourth amendment protection against unreasonable searches and seizures accorded to the home. It should be noted, however, that there is no claim that Officer Couch's observation of the cannabis from a distance of two suburban lots constituted a search in violation of the fourth amendment. Furthermore, the arrest which was based on probable cause arising from such observation and was affected during a consensual entry into defendant's home is likewise not challenged. The matters in dispute are the entry of two police officers into defendant's yard at the same time another pair of officers entered her home and the subsequent photographing and seizure of cannabis plants from the yard after her arrest.

There is no question that the tops of 16 of the cannabis plants were in plain view at a distance of two suburban lots. The warrantless seizure of items in plain view is permitted where: (1) the initial entry of the police into the premises is lawful or law enforcement officers are otherwise lawfully in a vantage point from which the items are visible; (2) the items seized must be discovered inadvertently; and (3) such items must be immediately apparent as evidence of crime, contraband or otherwise subject to seizure. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) Where the initial entry into the premises is lawful because entry is made pursuant to warrant or exigent circumstances, the plain view doctrine is an extension of the officer's prior justification for entry and allows the seizure of items in plain sight which he comes across. (*Texas v. Brown* (1983), 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535.) Although the plain view doctrine can be viewed as extending to nonpublic places the

law enforcement officer's long-standing authority to make warrantless seizures of weapons and contraband in public places (*Arizona v. Hicks* (1987), 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149), its operation is limited where the police officer's observation is made from a vantage point outside the home. This was made clear in *Coolidge v. New Hampshire*, where it was said:

> "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." (*Coolidge*, 403 U.S. at 468, 29 L. Ed. 2d at 584, 91 S. Ct. at 2039.)

Indeed, the parties here agree that a home cannot lawfully be entered for the warrantless seizure of contraband observed in plain view by law enforcement officers from an exterior vantage point. We do not, however, believe that the State's concession invalidates the instant seizure.

■ "[T]he Fourth Amendment protects people, not places." (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) Under *Katz v. United States* privacy must be respected where the individual has a subjective expectation of privacy which is demonstrated by taking the steps necessary to guard against disclosure and such expectation is one that society recognizes as reasonable. (*Oliver v. United States* (1984), 466 U.S. 170, 80 L. Ed. 2d 214, 104 S. Ct. 1735.) There is no societal interest in protecting the privacy of activities undertaken in open fields. (466 U.S. at 179, 80 L. Ed. 2d at 224, 104 S. Ct. at 1741.) However, society does recognize the right to privacy within curtilage, which is essentially the area harboring the intimate activity associated with the sanctity of one's home and the privacy of life. (*United States v. Dunn* (1987), 480 U.S. 294, 94 L. Ed. 2d 326, 107 S. Ct. 1134.) The criteria for determining the boundaries of curtilage and thereby the extent of the home's umbrella of protection include: (1) the proximity of the area to the house; (2) whether the area is within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by passers-by. (480 U.S. at 302-03, 94 L. Ed. 2d at 335-36, 107 S. Ct. at 1139-40.) Open fields, on the

other hand, include any unoccupied or undeveloped area outside of the curtilage and need not be either "open" or a "field" as such terms are used in common speech. (480 U.S. at 304, 94 L. Ed. 2d at 337, 107 S. Ct. at 1141.) The analysis to ascertain whether the production of drugs in *United States v. Dunn* and the illegal cultivation of contraband in *Oliver v. United States* were undertaken in open fields or within the curtilage is essentially that of *Katz v. United States*, which focuses on individuals, as well as their interactions with others, and expectations of privacy rather than on rigid rules of property. Accordingly, although a 15- to 25-foot cannabis patch on a suburban lot surrounded by double fences of 6 and 10 feet in height was assumed to be within the curtilage in *California v. Ciraolo* (1986), 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809, we cannot accept defendant's apparent argument that any cultivation of cannabis on a suburban lot *per se* falls within "classic" curtilage and is entitled to the same protection as the home without the application of the rule of *Katz* to the pertinent facts and circumstances. *People v. Pakula* (1980), 89 Ill. App. 3d 789, 411 N.E.2d 1385.

In *People v. Pakula* police from the adjoining lot observed three large cannabis plants growing among tomato plants in a fenced, suburban backyard. Although the fence did not obscure vision into the yard by passers-by, as was the case in *California v. Ciraolo*, entry by the public was made inaccessible by fencing, a closed gate and a guard dog. Moreover, defendant expressly refused entry to the police. Applying the rule of *Katz*, the court held that defendant had demonstrated an expectation of privacy and freedom from intrusion which society was prepared to recognize. (89 Ill. App. 3d at 793.) It is noteworthy that the result would have been the same had the *Pakula* court gone a step further and applied the four-pronged test later enunciated in *United States v. Dunn*, in which case the expectation of privacy by the family and its members would have been supported by the fact that three contraband plants were found within the home's enclosure and among the family's food-producing plants. Such circumstances demonstrate that the area in question was clearly an intimate part of the home life of the family and its members. Quite the opposite is demonstrated here.

■ A large crop of cannabis plants visible from a distance of two suburban lots was grown in a separate part of defendant's lot. No other plants were cultivated there, and defendant admitted that she alone planted and nurtured the cannabis plants and viewed such activity as distinct from family life. The yard was not fenced, and although some hedges grew alongside part of the cannabis patch, they were in-

complete and did not form a vegetation fence around the house or the patch. The record makes it clear that while defendant took steps to separate her illegal cultivation from her family's use of the yard, she took no steps at all to shield the garden from the view of passers-by or to limit their entry to the garden. Under the circumstances no subjective expectation of privacy or freedom from intrusion has been demonstrated. Moreover, it is difficult to say that society recognizes a right to privacy with regard to the production of cannabis in the substantial volume involved here even if cultivated on a suburban lot rather than a rural tract. In light of the foregoing, we do not believe that the warrantless entry into the yard and the photographing and seizure of the cannabis from the patch so situated violated the fourth amendment whether viewed as not constituting a privacy interest entitled to protection under the rule of *Katz* or as occurring in the open field under the rule of *Dunn*. Therefore plain error did not occur and defendant has waived the issue.

Defendant next contends that she was not proven guilty of the intent to deliver more than 500 grams of cannabis. Circumstantial evidence is proof of facts or circumstances from which the trier of fact can infer connected facts which ordinarily and reasonably follow according to the common experience of mankind. (*People v. Cruz* (1984), 129 Ill. App. 3d 278, 472 N.E.2d 175.) A mental state can seldom be proven by direct evidence and is generally inferred from circumstances which warrant the inference. (*People v. Knight* (1985), 133 Ill. App. 3d 248, 478 N.E.2d 1082.) It has been held that possession of a drug in excess of an amount normally intended for personal use creates a rebuttable presumption that the substance was possessed with the intent to deliver. (*People v. Knight* (1985), 133 Ill. App. 3d 248, 478 N.E.2d 1082; *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46.) Where the mental state is proved by circumstantial evidence, however, every reasonable hypothesis of innocence must be excluded, but the trier of fact is not required to search out all possible explanations consistent with innocence and elevate them to the level of reasonable doubt. (*People v. Atencia* (1983), 113 Ill. App. 3d 247, 446 N.E.2d 1243.) Moreover, where the circumstantial evidence may give rise to more than one inference, the reviewing court will not substitute its judgment for that of the trier of fact unless the inference it accepted was inherently impossible or unreasonable. *People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.

Here, defendant admitted the cultivation of 21 marijuana plants. The total weight of these plants when uprooted was 33.5 pounds. Only the leaves of the largest plant and the five smallest

plants were stripped, weighed at 842.2 grams, and determined by test to be cannabis. This limited sample of the formidable garden shown in the photographs admitted into evidence would, in our opinion, alone satisfy an inference of possession with intent to deliver. However, when defendant's full production capacity is considered there is little question that the evidence presented here clearly supports the trial court's finding and does not give rise to a reasonable hypothesis of innocence concerning the intent to deliver.

■ Defendant next contends that she was denied the effective assistance of counsel in violation of the sixth amendment. The standard for considering claims of ineffective assistance of counsel was recently enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. The standard promulgated by the United States Supreme Court requires the accused to demonstrate that counsel's representation "fell below an objective standard of reasonableness" and that but for counsel's errors it is reasonably probable that "the result of the proceeding would have been different," and defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." (466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Glass* (1984), 128 Ill. App. 3d 869, 873, 471 N.E.2d 597.) However, the inquiry will not generally extend to the exercise of judgment, discretion, trial tactics or strategy even where appellate counsel or the reviewing court might have handled the matter differently. (*People v. Puente* (1984), 125 Ill. App. 3d 152, 465 N.E.2d 682.) The accused is entitled to competent, not perfect representation (*People v. Purnell* (1984), 126 Ill. App. 3d 608, 467 N.E.2d 1160), and the fact that a tactic in retrospect proved unsuccessful does not demonstrate incompetence. (*People v. Bailey* (1976), 42 Ill. App. 3d 638, 356 N.E.2d 410.) Moreover, defendant may not rely on mere conjecture or speculation that the outcome would have been different with representation of higher caliber. (*People v. Puente* (1984), 125 Ill. App. 3d 152, 465 N.E.2d 682.) To ascertain whether the conduct of counsel affected the outcome, representation throughout the proceeding rather than isolated incidents is considered. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Glass* (1984), 128 Ill. App. 3d 869, 471 N.E.2d 597.) However, the sixth amendment requires, at a minimum that defense counsel be a true advocate and subject the State's case to a meaningful adversarial testing. (*United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.) "When a true adversarial criminal trial had been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred.

But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." 466 U.S. at 656-57, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045-46.

In two recent Illinois cases, convictions have been reversed where defense counsel's concession of guilt abdicated the duty to subject the prosecution's case to a meaningful adversarial testing. In *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, defense counsel in a jury trial unequivocally conceded defendant's guilt throughout the proceedings despite a not guilty plea, stated that the sole issue during the guilt-innocence phase of a bifurcated proceeding was defendant's punishment and further impressed upon the jury that guilt had already been decided. (109 Ill. 2d at 464.) The supreme court held that even where no viable defense is available, counsel may not concede guilt in an effort to obtain a more lenient sentence unless the record affirmatively demonstrates the knowing and intentional consent of defendant to such strategy. (109 Ill. 2d at 465.) As consent to defense counsel's strategy did not appear of record, the conviction was reversed without a showing that the outcome would have probably been different. (109 Ill. 2d at 465.) In *People v. Calhoun* (1986), 144 Ill. App. 3d 829, 494 N.E.2d 498, where the charges were armed robbery and murder, defense counsel, in a jury trial, conceded defendant's guilt of (a) an earlier nonfatal stabbing of the victim to demonstrate that defendant did not deliver the subsequent fatal blows and (b) the robbery to demonstrate that defendant acted in contravention to rather than in concert with the person who subsequently murdered the victim. (144 Ill. App. 3d at 831-32.) In support of this theory defense counsel produced medical testimony to the effect that the earlier stabbing would not have been fatal absent the independent intervening act of another. Under such circumstances, the concession of guilt of the stabbing and robbery was held to be a valid defense to the charge of murder and because the evidence concerning the stabbing and robbery was overwhelming, the trial tactic of admitting participation in some of what transpired was not considered to be incompetent. (144 Ill. App. 3d at 832.) However, inasmuch as defendant was also convicted of armed robbery to which he pleaded not guilty and a knowing and intelligent consent to the tactic of concession did not appear of record, this conviction was reversed. 144 Ill. App. 3d at 837-38.

■ We do not believe, however, that the reversal of defendant's conviction is supported in the instant case. Defendant admitted cultivating a marijuana crop which was demonstrated to be of substantial size by the volume of the evidence seized and the photographs taken. If such evidence could have been excluded, defendant's admission

coupled with Officer Couch's testimony concerning his observation from a distance of two suburban lots may have obtained a different result. Defense counsel worked diligently to exclude such evidence, alleging a fourth amendment violation in a motion to suppress, renewed this argument when the photographs were offered for admission into evidence, and raised the matter again during final argument. In retrospect this approach did not succeed, but no other theory of defense has been suggested which would have been more likely to achieve acquittal. Defendant also complains that during trial defense counsel neither questioned State's witnesses nor presented any defense witnesses. However, she likewise offers no theory of defense which could have been advanced by such activity and we perceive none. The import of defense counsel's argument was that the evidence of defendant's possession of cannabis was illegally seized and should have been suppressed and that the State failed to prove an intent to deliver. Defendant contends that defense counsel's remarks were an admission of guilt. We cannot agree. Defense counsel could have framed his argument more artfully. For example, he might have phrased the matter thusly: "[T]he State's evidence concerning possession was illegally obtained in violation of the fourth amendment, but assuming *arguendo* that the court's ruling does not change and possession has been proven here, there is no proof whatsoever of an intent to deliver." This was a bench trial, and we are satisfied that the trial court would have understood defense counsel's argument in this manner. Moreover, the record read as a whole satisfies us that the State's case was subjected to a meaningful adversarial testing. Accordingly, defendant is required to demonstrate a reasonable probability that the outcome would have been different in order to establish a violation of the sixth amendment. In the instant case such is not possible in light of the competent, if imperfect, representation and the overwhelming evidence of guilt.

■ Defendant also complains of defense counsel's failure to file a post-trial motion. We do not condone the inaction of privately retained counsel, and upon his withdrawal, that of the public defender, in this regard, but our review of the record has uncovered no reversible error. Thus, the contention is meritless.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and McNAMARA, J., concur.