THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY ACCARDI, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOLLY ACCARDI, Defendant-Appellant.

Second District    Nos. 2—95—1247, 2—95—1331 cons.

Opinion filed October 4, 1996.—Rehearing denied November 5, 1996.

32

Stephen M. Komie & Associates, of Chicago (Stephen M. Komie and Douglas Wm. Godfrey, of counsel), for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

Following a stipulated bench trial defendants, Gregory Accardi and Holly Accardi, were convicted of the unlawful possession of cannabis (720 ILCS 550/4 (West 1992)). Defendants appeal, contending that the trial court erred in denying their motion to suppress marijuana plants seized during a warrantless search of their property.

On September 13, 1992, Sergeant James Griffith of the Illinois State Police flew an airplane over portions of Kane County to look for marijuana growing. He flew at an altitude of 1,000 to 1,100 feet at a speed of 90 to 95 miles per hour.

He saw what he believed to be marijuana growing on defendants' property at the intersection of Route 38 and Meredith Road. Griffith took photographs of the property and gave them to Sergeant Roy Garcia, who had the film developed. Garcia reviewed the resulting photos with other agents, including William Powell of the Illinois State Police Task Force.

Powell decided that he and other members of the task force would go to defendants' property and try to obtain a consent to search it. Accordingly, on September 15, 1992, Powell and five or six other agents drove to defendants' property. One of the officers knocked on the door and Holly Accardi answered it. The officer requested that she wake her husband, Greg Accardi. Greg Accardi then accompanied the officers on a search of the property. The agents located and confiscated several marijuana plants. Greg Accardi was arrested and taken to the county jail. No one ever showed defendants a search warrant.

The marijuana plants grew near a chicken coop immediately adjacent to defendants' house. A long driveway services the house, a large barn, and the chicken coop. Trees surround the entire area encompassed by the three buildings, preventing them from being seen from either Route 38 or Meredith Road.

Both defendants were charged with the unlawful possession of cannabis. Defendants moved to quash their arrests and suppress evidence obtained as a result of the warrantless search of their property. At a hearing on the motion, defendants testified that neither of them ever gave the agents permission to search the property. Greg Accardi specifically denied signing a consent to search form. However, Powell testified that he presented Greg Accardi with a consent to search form and that the latter signed it, using the back of Agent Douglas Lamz as a writing surface. Two other agents who participated in the search stated that they saw Greg Accardi sign the consent to search form. Lamz testified that Greg Accardi was presented with the form, and Lamz believed that he signed it, although he could not see him do it. Each officer denied that he forged Greg Accardi's name on the consent form.

Jean Brundage, a document examiner for the Illinois State Police, testified that Greg Accardi's signature on the consent to search form was a forgery. The testimony of Steven Kane, an expert retained by the defense, was admitted by stipulation. Kane also concluded that Accardi's signature on the form was forged.

After the hearing, the parties argued the validity of the consent form. In response to a question by the court whether the plants could be seized without a warrant because they were in plain view from the airplane, the State cited *Florida v. Riley*, 488 U.S. 445, 102 L. Ed. 2d 835, 109 S. Ct. 693 (1989).

The court denied defendants' motion, finding that, pursuant to *Riley*, "the curtilage of someone's property is not always subject to the Fourth Amendment language regarding searches and seizures especially when there is a helicopter or plane involved." The court did not make any findings on the consent issue.

The court denied defendants' motion to reconsider. Defendants then submitted to a stipulated bench trial before a different judge, preserving the issues raised in the suppression motion. The court found defendants guilty, and they perfected this appeal.

Defendants contend that the court erred by relying on *Riley* to deny their motion to suppress. Defendants argue that the area in which the plants were found was within the curtilage of their home. Therefore, the police could not physically enter the curtilage to seize the plants without a warrant or evidence of some exception to the warrant requirement.

Ordinarily, a ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. *People v. Frazier*, 248 Ill. App. 3d 6, 12 (1993). However, where the facts and the credibility of the witnesses are uncontroverted, the issue becomes solely a question of law, subject to *de novo* review. *Frazier*, 248 Ill. App. 3d at 12-13. Here, the facts regarding the flyover and subsequent warrantless search of the property are essentially undisputed. Therefore, we review this question *de novo*.

In *California v. Ciraolo*, 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809 (1986), police flying in a fixed-wing aircraft observed marijuana growing in defendant's yard. The officers then obtained a warrant and searched the property. Although defendant's yard was surrounded by a double fence, the inner ring of which was 10 feet high, the Supreme Court held that the flyover was not a "search" within the meaning of the fourth amendment. The court found that defendant's subjective expectation of privacy was unreasonable because the police made their observations from the public airspace and thus saw no more than any private citizen could have seen from the same location. *Ciraolo*, 476 U.S. at 213-14, 90 L. Ed. 2d at 217, 106 S. Ct. at 1813.

In *Florida v. Riley*, 488 U.S. 445, 102 L. Ed. 2d 835, 109 S. Ct. 693 (1989), the court followed *Ciraolo* in holding that a warrant was not required for an officer's observation of marijuana from a helicopter hovering 400 feet above defendant's property. Writing for a four-person plurality, Justice White explained that *Ciraolo* held that "the home and its curtilage are not necessarily protected from inspection that involves no physical invasion." *Riley*, 488 U.S. at 449, 102 L. Ed. 2d at 841, 109 S. Ct. at 696 (opinion of White, J., joined by Rehnquist, Scalia, and Kennedy, JJ.).

Both *Ciraolo* and *Riley* held that a warrant was not required for the initial flyover because that was not a "search." Neither case held, however, that the police were authorized to physically enter the property to seize the contraband. In both cases, the police merely used the information obtained from the flyovers to secure search warrants. In *Ciraolo*, the court implicitly acknowledged that information obtained during a flyover was limited to this purpose, stating that "[s]uch observation is precisely what a judicial officer needs to provide a basis for a warrant." *Ciraolo*, 476 U.S. at 213, 90 L. Ed. 2d at 217, 106 S. Ct. at 1813.

■ The Supreme Court has consistently adhered to the principle that a physical invasion of the home or curtilage requires either a warrant or some recognized exception to the warrant requirement. " 'Belief, however well founded, that an article sought is concealed in

a dwelling house furnishes no justification for a search of that place without a warrant.' " *Vale v. Louisiana*, 399 U.S. 30, 34, 26 L. Ed. 2d 409, 413, 90 S. Ct. 1969, 1971-72 (1970), quoting *Agnello v. United States*, 269 U.S. 20, 33, 70 L. Ed. 145, 149, 46 S. Ct. 4, 6 (1925). Furthermore, plain view itself is not an exception to the warrant requirement. As Justice Stewart later explained:

> "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." (Emphasis in original.) *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 29 L. Ed. 2d 564, 584, 91 S. Ct. 2022, 2039 (1971) (opinion of Stewart, J., joined by Douglas, Brennan, and Marshall, JJ.).

In *People v. Schmidt*, 168 Ill. App. 3d 873 (1988), the Appellate Court, First District, upheld the warrantless seizure of marijuana plants from defendant's yard because it found that the area from which they were recovered was not within the curtilage. The appellate court·recognized the rule that "a home cannot lawfully be entered for the warrantless seizure of contraband observed in plain view by law enforcement officers from an exterior vantage point." *Schmidt*, 168 Ill. App. 3d at 879.

Here, the State does not dispute the trial court's finding that the plants were found within the curtilage. The evidence in the record supports this finding. Moreover, the State does not suggest that exigent circumstances rendered a warrant unnecessary. Powell testified that the agents had ample time to secure a warrant and that judges were available for the purpose. We conclude that the officers' observation of the marijuana did not authorize the subsequent warrantless entry on the property to seize the plants. For this reason, defendants' convictions must be reversed.

■ Anticipating this result, the State requests us to remand the cause for the trial court to make specific findings on the validity of the consent to search. Although this issue was the focal point of the hearing below, the trial court made no specific findings on this issue, apparently because of its belief that *Riley* permitted a warrantless entry and thus rendered consent unnecessary.

In their reply brief, defendants respond that the facts adduced at

the hearing overwhelmingly support the conclusion that they never consented to the search and that the purported consent form introduced at the hearing was a forgery. Alternatively, they maintain that this issue is irrelevant because the agents unlawfully entered their property before obtaining the consent and, according to the agents' own testimony, agents had "fanned out" across the property before the consent form was allegedly signed.

All of the officers testified that Greg Accardi signed the consent form in their presence and that he was neither threatened nor coerced prior to doing so. Although defendants denied signing the form, this merely creates an issue of fact on this question. Moreover, the fact finder is not required to accept experts' opinions on an ultimate question of fact. *People v. Mahaffey*, 166 Ill. 2d 1, 18 (1995).

Defendants fail to cite authority for their alternative propositions that the officers could not enter the property even for the limited purpose of obtaining a consent to search, or that their "fanning out" across the property prior to the alleged signing somehow invalidated an otherwise lawful consent. These facts might be relevant to a totality-of-the-circumstances determination that a purported consent was in fact involuntary. Here, however, defendants do not allege that a purported consent was coerced; they contend that they never signed the consent form.

In summary, we reverse defendants' convictions. We remand the cause to the trial court with directions to make specific factual findings regarding the validity of the purported consent to search. If the trial court determines that neither defendant gave consent to search the premises, then the court shall suppress the evidence obtained through the search.

The judgment of the circuit court is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

McLAREN, P.J., and INGLIS, J., concur.