THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MAURICE F. HARP, Defendant-Appellant.

Fourth District No. 4—89—0287

Opinion filed January 25, 1990.

Benjamin B. Allen, of Alton, and Howard L. White, of Jerseyville, for appellant.

Charles Colburn, State's Attorney, of Jacksonville (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant was charged by information with criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(1)) on May 10, 1988. A Morgan County jury found defendant guilty on January 13, 1989, and on March 7, 1989, the court sentenced him to six years' imprisonment. At trial defendant admitted he and the victim had sexual intercourse on February 18, 1989, but maintained it was consensual. On appeal, defendant raises seven issues, including various evidentiary matters, effectiveness of counsel, and reasonable doubt. We affirm.

Defendant is 60 years old. He is the brother-in-law of the victim's former husband, Art, and sold insurance to the couple while they were married. The victim, 34 years old, divorced Art in October 1987.

The victim testified defendant telephoned her on February 17, 1988, to discuss the impending cancellation of several insurance policies. He asked to meet with the victim at her home the following day to discuss insurance and asked whether the victim's daughter would be at home. The victim arranged to have a friend, Loretta Vaniter (Vaniter), present during defendant's visit.

Defendant arrived at the victim's home the next day earlier than planned. The victim telephoned Vaniter, who agreed to come immediately to the victim's home.

Defendant entered the victim's home, removed his coat, and went to the bathroom. The victim then went to the bathroom. When she exited, she found defendant standing naked in the hallway. She turned to run but defendant grabbed her from behind, under her arms, and dragged her into her daughter's bedroom. While being dragged, the buttons on the victim's blouse popped off, and her jeans were pushed down and fell to her ankles. Defendant forced the victim to lie on her daughter's bed, held her arms down with one hand, and pushed her underpants aside with the other. He penetrated her vagina with his penis for one to two minutes. After ejaculating, defendant let go of the victim's wrists and told her Art would kill her if she reported the incident.

Defendant left the house; the victim remained on the bed, crying, where Vaniter found her several minutes later. She told Vaniter the

defendant raped her. On cross-examination, the victim testified defendant never gave her money and she and defendant never had sexual relations prior to the assault on February 18.

Vaniter testified she saw defendant leaving the victim's house as she drove up. She found the victim lying across the bed in her daughter's bedroom, her blouse ripped open, bra on, jeans down, and panties on. Vaniter asked the victim whether she had pulled her panties up, and the victim replied that defendant had pulled them over to one side. Vaniter telephoned police.

Police officer Richard Evans (Evans), of the Village of South Jacksonville police department, responded to Vaniter's call. He went to the victim's house and found her wearing jeans and a torn blouse. The victim was emotional and told him the defendant raped her. Evans testified to the information the victim gave him that day and it was substantially identical to the testimony the victim gave at trial.

Paul Schuh, a crime scene technician with the Illinois State Police, went to the victim's home, collected evidence, and made photographs. He testified he found two buttons from the victim's blouse on the floor in the hallway and one button on the bedroom floor. The parties stipulated to a rape kit collected from the victim by Dr. Dennis Adams. Seminal material was found on the vaginal swab, the victim's jeans and panties, and the bedspread.

The defendant's defense was consent. He testified he telephoned the victim on December 15, 1988, and received permission to go to her house. The purpose of the call was sex, and he went immediately to her house, where he and the victim engaged in consensual intercourse. On January 11, 1989, defendant telephoned the victim and received permission to go to her house the following day. On January 12 defendant testified they engaged in consensual sexual relations. On January 21, 1989, defendant again went to the victim's home for sex but she declined.

Defendant testified he telephoned the victim on February 18 and asked to see her. The victim indicated she wanted to see defendant. When he arrived at the victim's house he removed his coat and went to the bathroom. The victim told him to go to the back bedroom and get ready and she would be right in. The defendant believed the victim was talking about sex. He went into the bedroom, undressed, and lay on the bed. The victim went to the bathroom and emerged with her blouse open and her pants down to the floor. The victim told defendant to lie across the bed and, as he shifted his position, she lay on the bed under him. The victim moved her panties to one side and placed the defendant's penis in her vagina. After intercourse, the

defendant testified, the victim told him he raped her and reached up to scratch him. The victim succeeded in scratching defendant's head and chest. Defendant grabbed the victim's wrists. The victim continued to assert defendant raped her. Defendant testified the victim was crying, though he described it as a "put on." He began dressing, and the victim threatened to call police. He begged her not to do so and left the house. He testified he never threatened her and when he left she was fully dressed with her blouse buttoned.

He admitted having sex with the victim on February 18, but denied using force and making threats. Defendant testified the victim never told him she did not want to have sex on February 18. He testified he gave the victim $30 on January 12 after having sex with her, but contended it was not payment for sex but financial aid previously requested by her.

On cross-examination, defendant claimed the victim was trying to "get him" for money and trying to get at her ex-husband. He described the victim as the aggressor in their sexual relations. On redirect examination, defendant testified he could not have held the victim's wrists up over his shoulders as she claimed because he lacked the strength, due to medical problems with his shoulder joints.

The State called four rebuttal witnesses. The first was Linda Tees, data process coordinator for Jacksonville School District No. 117. She testified she maintains attendance records for the schools and the victim's daughter was not in school on December 15, 1988, a snow day, or on January 21, 1989. The victim's 15-year-old daughter testified she was at home on December 15 because it was a snow day. She testified the roads were impassible. Gary Scott, news director at an AM radio station in Jacksonville, testified he is responsible for making weather records for the National Weather Service. He testified that on December 15, 1987, a snowstorm ended, leaving an accumulation of 7½ inches of snow.

The final rebuttal witness was Susan Carr (Carr), executive director at Rape Information and Counseling Service in Springfield, Illinois. After listing her qualifications, the court recognized her as an expert witness on rape-trauma syndrome. Carr then defined and explained rape-trauma syndrome and identified how the victim met each of the diagnostic criteria. She testified that in her opinion the victim exhibited symptoms consistent with rape-trauma syndrome.

We now turn to the issues defendant raises on appeal. He first argues he was denied his right to effective cross-examination when the trial court refused to permit his request that the victim demonstrate the manner in which she alleged the defendant grabbed her to drag

her down the hallway. We find the trial court properly refused to allow the demonstration.

■ The admissibility of courtroom demonstrations is discretionary, and a decision regarding admissibility will not be reversed unless the court abused its discretion to the prejudice of the defendant. (*People v. Pirrello* (1988), 166 Ill. App. 3d 614, 622, 520 N.E.2d 399, 405; *People v. Navis* (1974), 24 Ill. App. 3d 842, 848, 321 N.E.2d 500, 505.)

> "In deciding whether the trial court properly exercised its discretion, reviewing courts look primarily to whether the demonstration is probative of facts in issue and whether it is conducted under substantially similar conditions and circumstances as those which surrounded the original occurrence. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 1003-04.)" (*Pirrello*, 166 Ill. App. 3d at 622, 520 N.E.2d at 405.)

Demonstration evidence should be used to aid the jury in understanding other testimony, and not for dramatic effect. *People v. Everette* (1989), 187 Ill. App. 3d 1063, 1068, 543 N.E.2d 1040, 1042, quoting *People v. Seals* (1987), 153 Ill. App. 3d 417, 423, 505 N.E.2d 1107, 1111-12.

■ Defendant in this case was not denied the opportunity to cross-examine the victim on any part of her testimony. Defendant failed to show the demonstration would be probative of facts in issue and would be conducted under substantially similar conditions and circumstances as those surrounding the original attack. The decision of the trial court not to allow the proposed demonstration did not rise to the level of a denial of a fundamental constitutional right and did not prejudice the defendant. The decision was well within the trial court's discretion.

■ The second issue defendant raises is whether the trial court prejudiced him when it denied his motion for a mistrial after he made reference, in response to a question on cross-examination, to a polygraph examination. During his cross-examination of the defendant, the prosecutor asked defendant whether he read the statement he made to police before signing it. Defendant stated he did not read it initially but, when he returned to the police station several days later to take a polygraph test, he read and signed the statement. The prosecutor immediately asked to approach the bench. The jury was sent from the room, and the attorneys discussed the incident with the court. The prosecutor indicated he had not anticipated defendant's response. The court denied defendant's motion for a mistrial and ordered the jury to disregard the defendant's answer. It was stricken from the record. We conclude the trial court properly denied defend-

ant's motion for a mistrial.

"A defendant cannot complain of the admission of testimony which was invited by the defendant's own trial tactics. Further, a defendant who procures or invites the admission of evidence, even though it be improper, cannot be heard to complain about it on appeal." (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 44, 522 N.E.2d 191, 200.) *Escobar* also involved references to a polygraph examination by a witness. The prosecutor asked the witness how he remembered he did not have the gun on the day of the murder. The witness recounted the events of the day he was questioned by police and included a brief reference to taking a polygraph examination. The first district held *Escobar* was not prejudiced by this statement.

In this case, the prosecutor and court acted immediately on the defendant's answer. This cured any potential prejudice to defendant. (*People v. Paino* (1985), 137 Ill. App. 3d 645, 650, 484 N.E.2d 1106, 1109.) There is nothing in the record to indicate the prosecutor intentionally elicited the reference to the polygraph. Defendant simply volunteered the information. Our earlier decision in *People v. Eickhoff* (1984), 129 Ill. App. 3d 99, 471 N.E.2d 1066, is distinguishable. In that case, the State appealed from an order by the trial court allowing defendant's motion *in limine*, which sought to preclude admission of a police report in which defendant reportedly refused to take a polygraph examination. We affirmed the trial court's decision because we agreed the admissions contained in the report were "inextricably intertwined with the offer of a polygraph test and defendant's refusal" to take the test. (*Eickhoff*, 129 Ill. App. 3d at 105, 471 N.E.2d at 1070.) Reversing the defendant's conviction, as defendant urges, would encourage future defendants to utter the words "polygraph examination" knowing that, if convicted, they would win a mistrial or a new trial on appeal. We cannot allow such a result. For that reason, and because we find the defendant did not prejudice himself, we decline to overturn the trial court's decision denying defendant's mistrial motion.

The third issue raised by the defendant concerns the admission of rape–trauma-syndrome evidence. He argues its admission was erroneous. Defendant maintains the statute permitting such testimony (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—7.2) is inapplicable in light of case law from this court. He argues the court erred in admitting the testimony because its prejudicial effect outweighed its probative value. He also contends Carr testified in conclusory terms that the victim suffers from rape-trauma syndrome and there was a rape.

At trial defendant objected to Carr's testimony solely on the

ground it was inappropriate for rebuttal. It is well settled that "[t]he admissibility of evidence on rebuttal is within the discretion of the trial court." (*People v. Andrews* (1988), 172 Ill. App. 3d 394, 399, 526 N.E.2d 628, 632; *People v. Rios* (1986), 145 Ill. App. 3d 571, 584, 495 N.E.2d 1103, 1113; *Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 657-58, 518 N.E.2d 205, 217.) Carr's testimony was appropriate on rebuttal because defendant asserted the defense of consent.

Defendant does not object to the portion of Carr's testimony which defines and explains rape-trauma syndrome, its phases and diagnostic criteria. His objections begin with the prosecutor's question, "What did you observe about [the victim] that ties into the rape trauma syndrome?" Carr proceeded to explain how the victim herein met each of the diagnostic criteria for rape-trauma syndrome. Prior to trial, Carr had examined diaries written by the victim at the request of her rape counselor. Carr's testimony included repeated, detailed references to these diaries and the symptoms the victim displays. Carr also made reference to the victim being dragged down the hall as the buttons popped off her blouse. Finally, in response to a question from the prosecutor, Carr testified the victim exhibited symptoms consistent with rape-trauma syndrome.

■ The State argues that because defendant failed to raise these objections at trial and in his post-trial motion, they have been waived. "Objections at trial on specific grounds *** waive all other grounds of objection. (*People v. Jones* (1975), 60 Ill. 2d 300, 307.) The defendant has waived the right to object on the grounds he now asserts on appeal." (*People v. Barrios* (1986), 114 Ill. 2d 265, 275, 500 N.E.2d 415, 419; see also *People v. Gibson* (1983), 117 Ill. App. 3d 270, 283, 452 N.E.2d 1368, 1378.) We agree that defendant has waived these objections.

■ Even on the merits we disagree with defendant that Carr's testimony prejudiced him. The statute in effect on the date of defendant's trial states:

> "In a prosecution for an illegal sexual act perpetrated upon a victim, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, testimony by an expert, qualified by the court relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence." Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—7.2.

This statute, effective January 1, 1989, renders *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, and *People v. Douglas*

(1989), 183 Ill. App. 3d 241, 538 N.E.2d 1335, inapplicable to this case. Once a witness is qualified as an expert, the statute allows the admission of rape–trauma-syndrome testimony. The expert may offer an opinion on the ultimate issue. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.) See also *People v. Harris* (1989), 132 Ill. 2d 366, where the Illinois Supreme Court held a medical doctor may give his or her opinion as to whether the victim was sexually assaulted. (*Harris*, 132 Ill. 2d at 385.) The evidence was permissible rebuttal evidence. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.3, at 374-75 (4th ed. 1984).

■ Defendant's reply brief raised two additional arguments on this issue. He challenged the constitutional validity of the rape–trauma-syndrome statute and argued rape–trauma-syndrome evidence has been found unreliable, unlike other scientific evidence accepted by courts. He cites no authority for the latter proposition and fails to discuss the constitutional validity claim. Issues raised for the first time in the reply brief are waived. 107 Ill. 2d R. 341(e)(7); *People v. Brownell* (1984), 123 Ill. App. 3d 307, 319, 462 N.E.2d 936, 945.

Defendant next argues Carr prejudiced him when she hugged the victim in the presence of the jury following her testimony. The trial transcript is devoid of any reference to this incident. Defendant made no objection to the incident at trial, but did raise it in his post-trial motion for a new trial. An affidavit filed by Merle Harp, with defendant's motion for a new trial, states:

> "I, MERLE HARP, on Friday, January 13, 1989, during the course of the trial of Maurice F. Harp, observed Susan Chelap-Carr testify and leave the stand and sit next to and embraced [*sic*] the alleged victim *** in the courtroom in the presence of the Jury and the Court, and further, I noticed the Jury react."

■ The appellant bears the burden of presenting a record "sufficiently complete to permit review of the error complained of, and doubts arising from the presentation of the record will be resolved against the appellant." (*Griffiths v. Griffiths* (1984), 127 Ill. App. 3d 126, 130, 468 N.E.2d 482, 485.) The docket sheet indicates a hearing was held on defendant's post-trial motion, but a transcript of the hearing was not included with the record on appeal. The appellant may supplement the record on appeal with a bystander's report when no verbatim transcript is available. (107 Ill. 2d R. 323(c).) The bystander's report must, however, comply with the requisites of Illinois Supreme Court Rule 323(c). Merle Harp's affidavit does not meet the statutory requirements. For these reasons, we must presume the trial court ruled correctly in rejecting defendant's argument on this issue

when ruling on the post-trial motion.

■■■ The fifth issue on appeal raises a claim of ineffective assistance of counsel. Defendant argues trial counsel's performance fell below an objective level of reasonableness and, had counsel acted reasonably, the outcome of the trial would have been different. First, defendant claims trial counsel allowed the prosecutor, who was not qualified as an expert, to testify during his opening statement to rape statistics and acquaintance rape. However, both the judge and the prosecutor explained to the jury that opening statements were not to be treated as evidence. Next defendant cites trial counsel's failure to raise the victim's lack of memory of penetration in his motions for directed verdict and in the post-trial motion as evidence of ineffective assistance. We reject this claim as defendant admitted having intercourse with the victim. Finally, defendant claims he was denied effective assistance of counsel because trial counsel failed to object to Carr's rape–trauma-syndrome testimony. The State maintains that even if trial counsel had objected and succeeded in keeping out the expert testimony, defendant would have been convicted, because evidence of his guilt was overwhelming.

"Under the standard announced by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by our supreme court in *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005, and *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, a defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that but for counsel's errors the outcome of the proceeding would have been different. (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In examining counsel's performance, the inquiry is whether counsel's assistance was reasonable in the light of all the circumstances. (466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) In this regard, a reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and avoid interfering with the constitutionally protected independence of counsel or restricting the wide latitude counsel have in making tactical decisions. (466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *People v. Barnard* (1984), 104 Ill. 2d 218, 233, 470 N.E.2d 1005, 1010.) In other words, the adequacy of counsel's performance is to be determined on the basis of the totality of his conduct at trial rather

than on isolated events or acts (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936), since a defendant is entitled to competent, not perfect, representation (*People v. Schmidt* (1988), 168 Ill. App. 3d 873, 522 N.E.2d 1317). The *Strickland* court also stated that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies' but, rather, may dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069-70; *People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256), an allegation of which must be based on more than mere conjecture or second-guessing of counsel's trial strategy or tactics (*People v. Rangel*, 163 Ill. App. 3d 730, 516 N.E.2d 936), or speculation that the outcome might have been different with representation of higher caliber (*People v. Schmidt*, 168 Ill. App. 3d 873, 522 N.E.2d 1317.)" *People v. Colley* (1988), 173 Ill. App. 3d 798, 809-10, 528 N.E.2d 223, 231.

See also *People v. Enoch* (1988), 122 Ill. 2d 176, 201-02, 522 N.E.2d 1124, 1137, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

Based on the totality of trial counsel's conduct, it seems the defendant received competent, though not perfect, representation. Any errors by trial counsel did not prejudice defendant, and, thus, the *Strickland* test for ineffective assistance of counsel has not been met. We need not consider whether counsel's performance was deficient.

 █ The sixth issue defendant raises asks whether the trial court erred in denying defendant's motions for directed verdict. The seventh and final issue is whether there was sufficient evidence on which the jury could find defendant guilty beyond a reasonable doubt. Defendant's brief fails to address both of these issues. "Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (107 Ill. 2d R. 341(e)(7).) Defendant has thus waived these issues. On the merits, having reviewed the record, sufficient evidence was presented to survive the motion for directed verdict. In determining whether the evidence is sufficient to establish a defendant's guilt beyond a reasonable doubt, the pertinent inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have concluded that the evidence establishes the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Col-*

*lins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) The State proved all elements of the crime charged beyond a reasonable doubt.

Defendant's conviction is affirmed.

Affirmed.

LUND and STEIGMANN, JJ., concur.