# Illinois Official Reports

## Appellate Court

---

### *People v. White*, 2017 IL App (1st) 142358

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DERRICK WHITE, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-2358 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-13843; the Hon. Thomas J. Hennelly, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Christopher L. Gehrke, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Leslie Billings, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justice Howse concurred in the judgment and opinion.<br>Justice Burke dissented, with opinion. |

¶ 1    Following a bench trial, defendant Derrick White was found guilty of delivery of a controlled substance (heroin) (720 ILCS 570/401(d) (West 2012)) and sentenced to 10 years' imprisonment. On appeal, defendant contends that (1) the State failed to present sufficient evidence that he was the offender who delivered the controlled substance, (2) he was denied his right to a fair trial when the trial court precluded and limited his introduction of tattoo evidence, and (3) his fines and fees order must be reduced. We agree with his second argument, and thus we vacate defendant's conviction and remand for a new trial.

¶ 2    At trial, Chicago police officer Steven Leveille testified that, at 5:38 p.m. on June 25, 2013, he was undercover and working with a team of other officers attempting to conduct controlled drug purchases. Leveille walked toward an alley located near the 800 block of South Kedvale Avenue after officers alerted him that suspect drug activity was occurring in the area. As Leveille approached the alley, a man, whom Leveille indentified at trial as defendant, came up to him wearing a sleeveless white tank top. Defendant asked Leveille how many "blows" he wanted, which Leveille explained at trial was a street term for heroin. Leveille responded that he wanted two. Defendant, using his right hand, gave Leveille two plastic bags containing a white powdery substance, which Leveille believed was suspect heroin. In return, Leveille gave defendant $20 of prerecorded police funds. The parties later stipulated that the items recovered by Leveille tested positive for heroin and weighed 0.7 grams. Leveille walked out of the alley and alerted the other officers. He did not look to see where defendant went. Nothing obstructed Leveille's view of defendant's face during the transaction, and Leveille described the lighting conditions of the alley as "very good" because the sun was out. Leveille, who had been face-to-face with defendant, could also see defendant's right hand and arm. He did not remember observing any scars on defendant's face or tattoos on his body, the latter of which, he testified, he would have documented had he observed them.

¶ 3    Leveille returned to his vehicle but never received a communication that defendant had been arrested. He later returned to the police station where he inventoried the suspect heroin. At approximately 8:49 p.m., he viewed a photo array consisting of five individuals and identified defendant as the individual who sold him the suspect heroin.

¶ 4    Chicago police officer Edward Legenza, a surveillance officer, testified he was monitoring activity in the alley and saw a man, whom Legenza identified at trial as defendant, "congregating" with a large group of people. Legenza was "[j]ust south of" defendant's location and had a clear and unobstructed view of defendant. From there, Legenza observed defendant perform "hand-to-hand transactions" with several men in the alley and, as a result, alerted other officers that he had just observed suspect drug transactions. Defendant was wearing a white tank top, but Legenza did not observe any tattoos on his body. Legenza then testified that, from his "vantage point," he could not see whether defendant had tattoos. When shown his report, he admitted that he had written that the dealer "does not have tattoos." Legenza then witnessed the transaction between defendant and Leveille. After the transaction was complete, Legenza alerted other officers but lost sight of defendant and did not see him again that day.

¶ 5    Legenza returned to the police station where a sergeant put together a photo array. The photo array was created using the address of the transaction and the description of defendant, although Legenza acknowledged not including the latter in his report. Legenza agreed that he

never identified defendant in the photo array and never participated in any identification of him.

¶ 6    The parties stipulated that, two days later, defendant was arrested on the 800 block of South Kedvale Avenue based on Leveille's identification of him in the photo array. There was no evidence that defendant possessed narcotics or prerecorded funds when he was arrested. The parties further stipulated that Leveille and Legenza were not present when defendant was arrested and did not identify him following his arrest.

¶ 7    Defense counsel unsuccessfully moved for a directed finding, arguing defendant had been misidentified by the police.

¶ 8    In the defense's case, defendant sought to show the tattoos on his arms to the trial judge. The following colloquy occurred:

"DEFENSE COUNSEL: For demonstrative purposes, I would like to have the Defendant approach and show his Honor his tattoos.

THE COURT: Sure.

ASSISTANT STATE'S ATTORNEY: I will approach as well.

DEFENSE COUNSEL: Could you hold out both your right and left arm?

THE COURT: Well, you know what. Wait. He is not going to show me all of his tattoos. He is going to show me his right arm, which was the arm extended to the officer, and it will be face down. Take your arm and have your palm down, not up.

I am looking at his arm palm down, as is the State, and I see no tattoos.

DEFENSE COUNSEL: Your Honor, you are standing up above there, and the officer testified that he could see objects in his hand, in his palm, in his open hand.

THE COURT: You never made that clear in the record.

DEFENSE COUNSEL: I think it was clear, your Honor.

THE COURT: You want to argue with me? It was never clear on the record as to how his hand was presented to the officer, whether it was palm up and the forearm was showing or palm down. That was never put on the record. You could have asked the officer that when he testified. You never did.

DEFENSE COUNSEL: Judge, I also asked to have him approach, Judge.

THE COURT: Right, and I said that would do—that is not a demonstrative aid to have the officer in court observe your client after the fact. I said you could present evidence that there were tattoos and then attack the identification, which is what you are doing.

DEFENSE COUNSEL: Judge, I am going to ask that somebody stand next to my client in the way that the officer says he was standing next to him and have him hand it with his palm down and with his palm up. The officer clearly said that he saw objects in his hand.

THE COURT: And did he say the objects in his hand were released with his palm down, or did he say the objects in his hand were released with his palm up? Would you answer my question?

DEFENSE COUNSEL: He was not asked that.

THE COURT: Thank you. Proceed.

DEFENSE COUNSEL: Judge, I mean—

THE COURT: Anything further? You can save this for argument. The demonstration is done. Have a seat, Mr. White.

DEFENSE COUNSEL: Judge, I would like the record to reflect though that the tattoo that I for the record would like—

THE COURT: The record can reflect that he has a tattoo on his forearm with his palm facing up, but the record will reflect that you never specified in your cross-examination of the officer how he viewed the arm. He may have seen it with the palm up. He may have seen it with the palm down. You never did that with your direct examination. As a result, it is not in the record. What is in the record is that he didn't notice any tattoos. That is his testimony."

¶ 9   Leveille was recalled to testify for the defense and stated he did not remember how defendant's hand was positioned when defendant handed him the suspect heroin. Leveille added that he could not see the palm of defendant's hand and demonstrated how defendant reached over to him. The court noted that Leveille had "his hand extended from his body with the palm down." Defense counsel again requested that defendant be allowed to demonstrate, which the court denied. When defense counsel asked if the State would stipulate to the tattoos, the court stated it had already noted for the record, when defendant did the demonstration, that defendant had a tattoo on his right forearm that was visible with his palm up. The court explained: "I said I didn't see any tattoos with his arm extended with the palm down. I saw a tattoo with his arm extended with the palm up. That is what I saw, and that is what I put in the record. Is there something further you want to do?" The following colloquy took place:

"DEFENSE COUNSEL: Well, Judge, it is just from my vantage point as I was standing next to him, even with his hand down I could see the tattoo, and that is my concern.

THE COURT: Well the Court could not see the tattoo. I am the finder of fact. I saw him extend his arm. There was no tattoo.

DEFENSE COUNSEL: Judge, to be fair you are sitting up there.

THE COURT: I stood up, and I looked down at his arm.

DEFENSE COUNSEL: But that is not the vantage point of this officer. The officer is standing next to him as he is reaching over, and I think it would be fair to have a demonstration of that.

THE COURT: The officer did demonstrate.

DEFENSE COUNSEL: A demonstration of my client.

THE COURT: Do you want to call your client to the stand? You can do that. He can testify."

¶ 10   The court asked defense counsel if defendant was going to testify. After a brief delay, counsel informed the court that defendant would not testify. After the court admonished defendant about his right to testify, defense counsel again requested a demonstration with defendant "next to" Leveille because the officer would be able to see the tattoos from that vantage point. In denying the request, the court remarked that what Leveille could see "from the witness stand" was "not the same circumstances in which the drug transaction took place." The court further noted that it had observed the tattoo in the earlier demonstration and noted its observations for the record. Counsel again pointed out that the judge was "sitting up there," which was not the same vantage point because the judge was not "standing next to [defendant]

- 4 -

as the officer was." Counsel stated for the record that defendant had a tattoo of his name, "Derrick," and that it ran from his elbow to his wrist, and the court added it was located on the underside of his arm. Defense counsel further attempted to note that defendant had another tattoo on his left arm, but the court found that tattoo "irrelevant." The court stated: "The only thing relevant is the right arm that did the transaction." Counsel noted that the person who sold drugs to Leveille that day was wearing a tank top—that he had no sleeves on either arm—and that Leveille had testified that, had he seen the tattoos, he would have put them in the report.

¶ 11     The trial court found defendant guilty of delivery of a controlled substance. It found that Leveille testified "without impeachment" and had identified defendant in a photo array "a mere" three hours after the transaction occurred. The court further noted that Leveille testified "clearly and convincingly" and it had "no reason to disbelieve him." Additionally, the court observed that Legenza testified the array was created using the address of the transaction and the physical characteristics of defendant, and he identified defendant in court as the offender. Regarding defendant's tattoos, the court stated the testimony of Leveille demonstrated the transaction occurred with defendant's palm facing down, which would not have revealed the tattoo on defendant's right forearm. The court also noted "parenthetically" that no evidence had been presented as to when defendant "acquired that tattoo," and as a result, the court did not know if defendant acquired the tattoo after the transaction with Leveille.

¶ 12     Defendant moved for a new trial, arguing that the trial court erred in denying him the opportunity to show all of his tattoos and to demonstrate how the transaction with Leveille allegedly took place. In denying the motion, the court noted that the demonstration defense counsel requested was "inappropriate and improper criminal procedure" and could have been accomplished in other ways, including through defendant testifying. The trial court later sentenced defendant to 10 years' imprisonment. This appeal followed.

¶ 13     On appeal, defendant first contests the sufficiency of the evidence to establish that he delivered a controlled substance to Leveille. Specifically, defendant argues the State's identification evidence was insufficient, as its case against him depended on Leveille's identification from an improper photo array, and although defendant had a large tattoo across his right forearm and one on his left arm as well, neither Leveille nor Legenza recalled seeing a tattoo on the offender.

¶ 14     When a defendant challenges his conviction based on the sufficiency of the evidence presented against him, we must ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find all the elements of the crime proven beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). All reasonable inferences must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. While we must carefully examine the evidence before us, credibility issues, resolution of conflicting or inconsistent evidence, weighing the evidence and making reasonable inferences from the evidence are all reserved for the trier of fact. *Brown*, 2013 IL 114196, ¶ 48. We will not overturn a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 15     Where identification is the main issue, the State must prove beyond a reasonable doubt the identity of the individual who committed the charged offense. *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). In assessing identification testimony, Illinois courts utilize a five-factor test

established in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). See *People v. Slim*, 127 Ill. 2d 302, 307 (1989). The factors are:

> "(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." *Id.* at 307-08.

¶ 16    These factors weigh in favor of Leveille's and Legenza's identification of defendant as the individual who delivered the controlled substance. Regarding the first factor, Leveille testified that he had a clear and unobstructed view of the offender's face as he conducted the face-to-face transaction. Although the transaction was brief in time, it occurred in broad daylight. See *People v. Jackson*, 2016 IL App (1st) 133741, ¶ 60 (police officer had strong opportunity to view offender when he approached officer's vehicle in broad daylight and engaged in hand-to-hand drug transaction). Additionally, Legenza, the surveillance officer, testified he was "just south" of the offender and had a clear and unobstructed view of him in the alley. The evidence therefore reveals a strong opportunity for both Leveille and Legenza to view the offender.

¶ 17    Regarding the second factor, the record does not explicitly reveal any testimony as to Leveille or Legenza's attentiveness. But they were performing their respective roles as an undercover officer purchasing suspect drugs and a surveillance officer and therefore had reason to intently focus on the offender. See *id.* (when police officer conducts planned controlled purchase of drugs, his or her degree of attention during transaction would "obviously [be] focused"); *People v. Ford*, 195 Ill. App. 3d 673, 676 (1990) (same). It is therefore reasonable to assume that Leveille and Legenza paid strong attention to the offender.

¶ 18    Regarding the third factor, defendant was not arrested until two days after the transaction. Although both Leveille and Legenza testified to their description of the offender shortly after the transaction, the description was generic—*i.e.*, black male—and isolated mostly to his clothing. Additionally, there was nothing presented at trial with which to compare these initial descriptions to defendant on his arrest or at trial. The evidence at trial revealed a tattoo on defendant's right forearm, but Leveille and Legenza did not recall the offender having a tattoo. Thus, this factor weighs in favor of defendant but does not render the officer's identification of defendant entirely unreliable. Nor does it outweigh the factors in favor of the State.

¶ 19    Regarding the fourth and fifth factors, Leveille positively identified defendant as the offender in a photo array three hours after the transaction occurred, and no evidence in the record shows any uncertainty in Leveille's identification. These two factors therefore weigh in favor of a reliable identification. See *Jackson*, 2016 IL App (1st) 133741, ¶ 60 (positive identification of defendant in photo array one hour after drug transaction favored reliability). Additionally, Leveille and Legenza both identified defendant at trial as the offender only 10 months after the controlled drug purchase.

¶ 20    In sum, after weighing the factors and viewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found Leveille's and Legenza's identification of defendant as the offender was reliable. We therefore conclude that the State sufficiently proved defendant guilty of delivery of a controlled substance.

¶ 21    Defendant, however, argues that he was misidentified as the offender, as demonstrated by the fact that he has a dark scar on his nose, a large tattoo on his right forearm, and other tattoos

on his left arm, yet neither officer observed a tattoo on the offender, and Leveille did not recall the offender having any scars. Omissions as to a defendant's facial features or other physical characteristics are not fatal. *Slim*, 127 Ill. 2d at 308. Rather, they merely affect the weight to be given to such testimony. See *People v. Robinson*, 206 Ill. App. 3d 1046, 1051 (1990) (reliability of identification does not depend on physical or facial characteristics of defendant, but rather on opportunity witness had to observe offender). We will not reweigh the evidence in defendant's case and substitute our judgment for that of the trial court on such factual issues. See *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).

¶ 22 Defendant next attacks the identification of him as the offender by challenging the photo array used by the police to identify him, arguing that only "very general criteria" were used to create the array and the array "draws attention to [defendant's photo]." Prior to trial, defendant moved to suppress the photo array identification of him as suggestive, which the trial court denied. Because the photo array identification was found admissible, any deficiency in the procedures or the related testimony goes to the weight of the evidence, which is within the province of the trier of fact. See *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 23 Additionally, defendant points out the trial court found that both Leveille and Legenza stated the photo array was conducted using the location of the transaction and a general description of the offender, which contradicts the trial evidence showing only Legenza testified to the photo array's creation. Although the trial court misspoke, we cannot find this isolated misstatement influenced its finding of guilt.

¶ 24 In sum, we cannot say that the evidence against defendant is "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of [his] guilt." *Brown*, 2013 IL 114196, ¶ 48.

¶ 25 Defendant next argues that he was denied his right to a fair trial when the trial court limited his introduction of tattoo evidence which, he asserts, was crucial to his misidentification defense. Specifically, defendant argues the court erred when it (1) ruled the tattoo on his left arm was irrelevant, (2) did not permit Leveille to acknowledge the tattoos on either of his arms, (3) precluded him from demonstrating the transaction with Leveille, and (4) improperly compelled him to show his right forearm with his palm facing down during a partial in-court demonstration. We find merit in these claims.

¶ 26 Defendant's theory at trial was that he was misidentified. His best evidence was that neither police officer had described the drug dealer as having tattoos when they observed him during the drug transaction, when in fact defendant had tattoos on both arms. In more than one way, the trial court prevented defendant from presenting this defense.

¶ 27 First, the trial court did not allow defendant to demonstrate that, from Leveille's viewpoint at the time of the alleged drug sale, defendant's tattoos would have been visible to the officer. An in-court demonstration should be " 'probative of facts in issue and *** conducted under substantially similar conditions and circumstances as those which surrounded the original occurrence.' [Citation.]" *People v. Harp*, 193 Ill. App. 3d 838, 843 (1990). Its purpose is to aid the fact finder in understanding other testimony. *Id.* Evidence that defendant's tattoos would have been visible to Leveille at the time of the drug transaction was unquestionably probative and relevant to the credibility of the officers' identifications of defendant as the drug dealer in question. And by having the officer demonstrate exactly his positioning *vis-à-vis* defendant during the events in question, the demonstration would have been conducted under substantially similar conditions.

¶ 28   Instead, the trial court decided that its own view of defendant's right forearm, when turned palm down, from its vantage point on the bench "about two feet above" defendant, was all the court needed to know—that when defendant's palm was turned down, the tattoo on the right forearm was not visible. Defense counsel insisted this was not so and was entitled to prove it by asking Leveille the question directly, while the officer and defendant were positioned in whatever manner the officer would have testified was consistent with their positioning that night. The officer, when recalled by defendant, hedged in his testimony on exactly how defendant's arm was positioned, but given defense counsel's proffer that the officer would have been able to see the tattoo even if defendant's arm were turned downward, the proffered evidence would have been relevant in any event. The court erred in substituting its own view of defendant's right arm, under *not* substantially similar conditions, in lieu of this relevant testimony.

¶ 29   The court also erred by not allowing defense counsel to introduce any evidence whatsoever regarding the tattoo on defendant's left arm. The court deemed it irrelevant, reasoning that the man who handed the officer the drugs did so with his right hand, not his left. The flaw in this reasoning is that Leveille did not limit his testimony to only seeing defendant's right arm; he said that he first saw defendant emerging from a garage into the alley and then walking up to Leveille. In other words, he saw more than just defendant's right arm. He had a clear view, on a sunny day, of defendant as he approached him head-on and then stopped just short of him, face-to-face. Defendant was entitled to challenge the testimony of the officers, that the drug dealer did not have any tattoos, by showing that he had one on his left arm every bit as much as he had the right to show that he had one on his right arm.

¶ 30   A criminal defendant is constitutionally guaranteed a meaningful opportunity to present a complete defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *People v. Ramirez*, 2012 IL App (1st) 093504, ¶ 43; U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. In this case, by not permitting any evidence of defendant's left-arm tattoo, by not permitting defendant, via a demonstration, to have Leveille testify as to whether he could see either tattoo on defendant, and by making a finding of fact that the right-forearm tattoo would not have been visible to the officers based only on its own dissimilar view of defendant from the bench, the trial court denied defendant a meaningful opportunity to present his defense and confront the witnesses against him. This was not, as the State suggests, a mere technical evidentiary ruling that limited only a discrete piece of evidence; the court's rulings effectively denied defendant any defense whatsoever.

¶ 31   A constitutional error is harmless beyond a reasonable doubt only if it appears that the error did not contribute to the verdict. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). The State bears the burden of proof. *Id.* Our supreme court has identified three different approaches for measuring error under this standard:

> "(1) focusing on the error to determine whether it might have contributed to the conviction, (2) examining the other evidence in the case to see if overwhelming evidence supports the conviction, and (3) determining whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Id.*

¶ 32   The State contends that the errors here are harmless for two reasons: (1) the errors did not contribute to defendant's conviction, and (2) the evidence here was "overwhelming."

¶ 33   First, the State has failed to meet its burden of showing that these errors did not contribute to defendant's conviction. As defendant notes, the State's case against him rested primarily on

- 8 -

a single pretrial identification made from a photo array, performed after the police were unable to locate the dealer. The evidence at trial consisted of the eyewitness testimony of two police officers. Although Leveille identified defendant in this photo array, he also testified that he did not recall seeing any scars or tattoos on the dealer's body, even though he was standing in close proximity to the dealer while conducting an operation designed to identify drug dealers, and while the dealer was wearing a sleeveless tank top. Legenza also did not observe any tattoos on the dealer's body, and his report stated that the dealer did not have any tattoos. But defendant has a large wrist-to-elbow tattoo on his right arm and one on his left arm as well. Thus, the trial court's erroneous rulings that prevented relevant tattoo evidence from being presented or considered "might have contributed to the conviction" of defendant.

¶ 34    Second, the State's identification evidence was far from overwhelming. Besides the discrepancy between the officers' testimony that the dealer, who was wearing a tank top, had no tattoos, compared to the fact that defendant has tattoos on both arms, the State presented no evidence that defendant had any narcotics or prerecorded funds on his person or in his home when he was arrested. No confirmatory identification took place after defendant's arrest.

¶ 35    And the photo array identification does not overcome these deficiencies. The photo array arguably emphasized and highlighted defendant's photograph. Four of the photos are grouped together in a square on the left side of the array. But defendant's photograph is isolated on the right side. The other four persons all have round heads and faces. Defendant is the only person with a long, narrow head and face. Each of the heads of the other four persons is facing forward; defendant's head is turned. All four of the other individuals have mustaches; defendant does not. The other four individuals have neutral expressions while defendant is sucking his lips in what he describes as a strange expression. The other four individuals' clothes are visible; defendant's clothes are not visible. The picture of defendant shows his head framed on all sides by a white border and background, whereas all of the other four individuals are standing in front of what appears to be the same gray wall.

¶ 36    We held earlier that the State's evidence was enough to satisfy the minimal standard for a sufficiency of the evidence challenge, but the State's evidence was by no means overwhelming. Accordingly, the State cannot prove beyond a reasonable doubt that the errors at issue did not contribute to the verdict. We vacate defendant's conviction and remand for a new trial. As such, we need not address defendant's argument that his fines and fees order should be modified.

¶ 37    The dissent accuses us of holding "that a defendant can demonstrate without restriction and not be subject to cross-examination." *Infra* ¶ 53. That is not a fair characterization of our holding. We take no issue with the proposition that a court may limit, restrict, or deny altogether a demonstration in the appropriate circumstances. And we will defer to that ruling unless we find, as we do here, that the court abused its discretion. That is a far cry from holding that a defendant can do whatever he wants, "without restriction." Moreover, we do not understand the dissent's characterization of our decision as holding that defendant would "not be subject to cross-examination." The demonstration that defendant sought, and that he should have been allowed to conduct, would involve questions put to the *police officer*, who would recreate his and the drug dealer's position and movements during the drug buy to determine if defendant's tattoos would have been visible to the officer—testimony that obviously would be subject to cross-examination.

¶ 38     The dissent also claims that we are supplanting the trial court's findings with our own. The opposite is true. We did not reverse defendant's conviction outright, finding the trial court's findings of fact unreasonable or unsatisfactory. Instead, we held above, based on the appropriately deferential standard of review, that the evidence was sufficient to support the conviction. Beyond that, however, we have held that defendant did not receive a fair trial. The trial court's error was principally an *evidentiary* one; the court denied defendant his right to a complete defense by not allowing defendant to ask the police officer—the one who claimed to have stood face-to-face with defendant while purchasing drugs from him; the one who swore that he did not recall ever seeing tattoos on the man—whether he could see defendant's tattoos during a reenactment of the transaction. Our criticism of the trial court's factual findings is limited to the fact that the trial court not only refused to allow this clearly relevant evidence but made matters worse by substituting its own finding from a *dissimilar* viewpoint from the bench.

¶ 39     The dissent suggests that defendant's left-arm tattoo was properly ruled irrelevant by the court. Two experienced, trained police officers, one whose only role was to observe the suspect drug dealer, had the opportunity to see the dealer from the front and from a profile. The buy officer, Leveille, stood face-to-face with the dealer. Each of them had an opportunity to observe the dealer's left arm just as much as his right. It may be true that during the actual drug handoff itself, the buy officer's focus was on the right hand, but both officers laid eyes on the dealer before that handoff. Even if defendant's left-arm tattoo might be slightly less significant than his right one for this reason, we do not see how its relevance was so minimal as to fall outside the bounds of relevancy altogether, no matter how deferential our standard of review.

¶ 40     The dissent's only explanation is that the encounter between police and drug dealer was "extremely brief" (*infra* ¶ 58), but the dissent takes no issue with our previous determination that the officers got a sufficiently good look at the suspect to overcome a sufficiency of the evidence challenge under the *Slim*/*Biggers* standard for witness identifications. If the officers' ability to view the suspect dealer was sufficiently reliable to send defendant to prison for a decade, it was sufficiently reliable to at least allow for the *possibility* that defendant's tattoos would have been visible to them during the encounter, if in fact defendant was that drug dealer. And all defendant wanted was the chance to ask that question.

¶ 41     Last, the dissent agrees with the trial court that defendant could have avoided the need for a demonstration by merely taking the stand himself. But that misses the point entirely. First, it is hard to imagine how defendant could have reenacted the controlled buy himself when his defense theory was that he was not there when it happened, that the police got the wrong guy. Second and even more to the point, the critical question here is whether the tattoos were visible *to the officer who identified defendant*. Defendant could not possibly have testified about the viewpoint of the hypothetical person standing opposite him. The only way to know what was visible to Leveille was to ask Leveille.

¶ 42     Defendant, in his final point, requests that this court order that a different judge preside over the new trial. Illinois Supreme Court Rule 366(a)(5) permits a reviewing court to make any order or grant any relief that a case may require. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). "This authority includes the power to reassign a matter to a new judge on remand." *Eychaner v. Gross*, 202 Ill. 2d 228, 279 (2002); see also *People v. Tally*, 2014 IL App (5th) 120349, ¶ 43. Defendant contends that the trial judge displayed prejudice and hostility toward him.

¶ 43    Though we have found that the court committed error in this case, we see no indication that the court will not follow the law on remand. Thus, we decline to reassign this matter to a different judge.

¶ 44    Defendant's conviction is vacated, and this case is remanded for a new trial.

¶ 45    Vacated and remanded.

¶ 46    JUSTICE BURKE, dissenting.

¶ 47    At a bench trial, the defense theory was that the officers misidentified the defendant. Defendant did not testify but was allowed to demonstrate his arm to the court, showing a wrist-to-elbow tattoo on the underside of his arm containing the letters of his name, Derrick. The trial court made findings of fact that defendant presented his arms to the court, and that the tattoo was not visible when the defendant's palm was facing downward. The purchasing officer testified that during the transaction, defendant extended his right arm with his palm down, with the officer's palm up to receive the drugs from defendant. The trial court ruled that defendant's left arm tattoo was irrelevant.

¶ 48    Defendant repeatedly asked for a different, more elaborate, demonstration. Defendant wanted the purchasing officer to stand next to defendant in the courtroom and reenact the transaction, without the defendant being sworn and subject to cross-examination. In denying the request, the court remarked, "What the officer sees in my courtroom from that vantage point from the witness stand is not the same circumstances in which the drug transaction took place. Now you presented your client to show me, and I wasn't out there on the date that this alleged transaction took place. You showed me what was on his body, and I saw what was on his body, and I put that in the record." To which defense counsel replied, "Again, Judge, I am asking for a demonstration, my client next to the officer with his arm held the way the officer describes it so you can see....from that vantage point that you can see the tattoos." The judge denied the request.

¶ 49    When finding defendant guilty, the trial court made findings of credibility with regard to the officer. He found that the officer testified "without impeachment" and "clearly and convincingly" and it had "no reason to disbelieve him." Regarding defendant's tattoos, the court stated the testimony of the purchasing officer demonstrated the transaction occurred with defendant's palm facing down, which would not have revealed the tattoo on defendant's right forearm. The court also noted that no evidence had been presented as to when defendant acquired that tattoo, and as a result, defendant could have obtained the tattoo after the transaction had occurred.

¶ 50    In his motion for new trial, defendant argued that the trial court erred in denying him the opportunity to show all of his tattoos and to demonstrate how the transaction with the officer allegedly took place. In denying the motion, the court noted that the demonstration defense counsel requested was inappropriate and improper criminal procedure and could have been accomplished in other ways, including through defendant testifying.

¶ 51    Defense counsel made no offer of proof such as a photograph or even a description of the size, lettering, or shape of the tattoos. A defendant who claims he was not given the opportunity to present his case because the trial court improperly barred evidence "must provide [the] reviewing court with an adequate offer of proof as to what the excluded evidence

would have been." (Internal quotation marks omitted.) *People v. Boston*, 2016 IL App (1st) 133497, ¶ 63.

¶ 52 The majority agrees with defendant that the trial court abused its discretion in not allowing the reenactment of the crime between the defendant and the police officer. I do not. The majority is finding that this ruling was arbitrary, fanciful, or unreasonable or that no reasonable person would adopt the trial court's view. *People v. Taylor*, 2011 IL 110067, ¶ 27.

¶ 53 In finding this abuse of discretion, the majority states, "In more than one way, the trial court prevented defendant from presenting this defense." *Supra* ¶ 26. I disagree. The trial court adhered to the rules of evidence. There is no authority cited by the majority for the proposition that a defendant can demonstrate without restriction and not be subject to cross-examination. There is no citation to authority because there is no authority for such a position, until now.

¶ 54 The only case cited by the majority is *Harp*. It is worth noting what the *Harp* court found. The defendant in that case wanted the victim in a sexual assault case to demonstrate the manner in which she alleged the defendant grabbed her to drag her down the hallway. *Harp*, 193 Ill. App. 3d at 842. The appellate court affirmed the trial court's refusal to allow the demonstration, finding that allowing a demonstration is discretionary with the trial court, and a trial court's determination regarding admissibility stands unless the court abused its discretion to the prejudice of defendant. *Id.* at 843.

¶ 55 The trial judge in this case saw the tattoos, made a record of his observations, and applied those factual determinations to the testimony that he had heard. Simply because the court did not agree with counsel's viewpoint regarding the visibility of the tattoos does not mean that the court erred, much less abused its discretion.

¶ 56 Even if the officers had testified that they saw the tattoos at trial but did not notice them at the time of the occurrence, omissions as to a defendant's facial features or other physical characteristics are not fatal. *Slim*, 127 Ill. 2d at 308. Rather, they merely affect the weight to be given to such testimony. See *People v. Robinson*, 206 Ill. App. 3d 1046, 1051 (1990) (the reliability of identification does not depend upon the physical or facial characteristics of the defendant but rather the opportunity the witness had to observe the offender). Presumably, defense counsel was attempting to impeach the officers' identification of defendant by the officers' failure to note the tattoos. The appellate court should not reweigh the evidence in defendant's case and substitute our judgment for that of the trial court on such factual issues. See *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).

¶ 57 The critical facts derived from trial were that the purchasing and surveillance officers did not observe tattoos on the offender and, at the time of trial, defendant had a tattoo on his right forearm. The only evidence presented at trial about the tattoo was defendant's in-court demonstration and the related comments from defense counsel and the court. We do not have a picture of the tattoo or an offer of proof regarding the size or depth of color differentiation between the tattoo and the defendant's skin, the width of the lettering, or the thickness of the lettering. What we do have is the factual finding made by the trial court regarding the visibility of the tattoo. The trial court found that the tattoo was not visible when the defendant's arm was held the way the unimpeached officers testified that it was. We cannot simply find that the factual findings made by a trial court are meaningless. A reviewing court must defer to the trier of fact on factual issues, such as the visibility of a tattoo (see *Brown*, 2013 IL 114196, ¶ 48), because we, as the reviewing court, cannot see the tattoo. As we are in the inferior position to make such factual findings (see *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 24), I would

find no basis to disturb the trial court's conclusions on the tattoo evidence. The trial court is required to make these findings. The appellate court cannot make these findings or reverse a trial court because the trial court did not reach the same conclusions that someone reading a transcript would.

¶ 58      With regard to the left arm tattoo evidence that the trial court ruled irrelevant, whether evidence is admitted or excluded at trial depends upon that evidence's tendency "to make the question of guilt more or less probable; *i.e.*, whether it is relevant." *People v. Ward*, 101 Ill. 2d 443, 455 (1984). The trial court may exclude evidence on the ground that it is irrelevant if it has "little probative value due to its remoteness, uncertainty or its possibly unfair prejudicial nature." *Id.* Evidentiary rulings made by the court will not be reversed absent an abuse of discretion. *Id.* at 455-56; *People v. Oliver*, 306 Ill. App. 3d 59, 73 (1999) (admissibility of courtroom demonstration reviewed for abuse of discretion). The court found that the officer's focus was on the right arm, to receive the drugs, during the extremely brief encounter. The other arm was not the focus. The court's ruling in this regard must be viewed under the abuse of discretion standard: Could any reasonable person find what the trial court found? The trial judge was the trier of fact. He was not precluded from seeing the tattoo; he saw it and found that information was irrelevant. The question is not how the appellate court views this evidence, which it has not seen and of which it has no description or offer of proof. The question is whether the trial judge's belief that the evidence was irrelevant was so unreasonable that no reasonable person could ever adopt its view. The majority has no basis with which to find that this standard was met.

¶ 59      Here, the trial court did not preclude defendant from presenting his misidentification defense based on tattoo evidence. Rather, it heard the evidence, made findings of fact and then correctly limited the means by which defendant could present the evidence supporting his defense. The trial court allowed defendant to approach the bench to show the tattoo on his right forearm with his palm facing down. The court did not allow a complete reenactment. Given that the court allowed defendant some latitude to perform his initial demonstration, it cannot now be said that the court abused its discretion in precluding a reenactment without the defendant ever being sworn and subject to cross-examination. To hold otherwise demonstrates a disregard of the abuse of discretion standard.