2019 IL App (1st) 1172695-U

No. 1-17-2695

Order filed November 26, 2019

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 17458 |
| | ) | |
| TYLER MOORE, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for delivery of a controlled substance is affirmed over his contention that the State failed to prove beyond a reasonable doubt that he delivered cocaine to an undercover police officer.

¶ 2    Following a bench trial, defendant Tyler Moore was found guilty of delivery of a controlled substance (720 ILCS-570/401(d) (West 2014)) and sentenced to three years' imprisonment. On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that he was the person who delivered cocaine to an undercover police officer because the identification

testimony of the State's witness was unreliable and no other evidence connected him to the offense. We affirm.

¶ 3    Defendant was charged with two counts of delivery of a controlled substance. Count one charged defendant with unlawfully and knowingly delivering less than one gram of a substance containing cocaine within 1000 feet of a public park. 720 ILCS 570/407(b)(2) (West 2014). Count two charged defendant with unlawfully and knowingly delivering less than one gram of a substance containing cocaine. 720 ILCS 570/401(d) (West 2014). Prior to trial, the State dismissed count one and proceeded on count two.

¶ 4    At trial, Chicago police officer Rosario Lazzara testified that on August 4, 2015, he was working as the undercover buy officer on an eight-person team that conducted a controlled narcotics transaction. At about 1:00 p.m., Lazzara made a phone call and arranged to meet someone in the area of Howard Street and Sheridan Road to purchase $60 worth of crack cocaine. Lazzara drove to that area, made another phone call to the same phone number, and told the man who answered that he was in the area. The man directed Lazzara to go to the gas station at the southwest corner of Howard Street and Sheridan Road. Lazzara gave the man his location and a description of his vehicle. A car arrived at the gas station and approached Lazzara's vehicle. The car stopped next to the driver's side of Lazzara's vehicle, and Lazzara saw two adults and a few children in the car. Lazzara testified that he looked at the passenger in the front seat of the car, and identified him in court as defendant.

¶ 5    Defendant told Lazzara to follow the car. Lazzara followed the car out of the gas station, and drove for less than a minute to 7502 Greenview Street, where he parked directly behind the car defendant was in. Lazzara exited his vehicle and approached the passenger side of the car he

had parked directly behind. Lazzara approached the passenger side of the car, where defendant was still seated. It was daylight and Lazzara got a "good look" at defendant's face. Lazzara also noticed that defendant had a tattoo on his lower right arm that said "Glenn Riches."

¶ 6    Lazzara gave defendant $60 in prerecorded 1505 funds and defendant gave Lazzara a clear knotted bag containing a white rock-like substance of suspected crack cocaine. Lazzara kept the suspected narcotics in his constant custody, care and control until he reached the police station, where he inventoried the item.

¶ 7    After the transaction, Lazzara returned to his vehicle and drove away. He testified he had done hundreds of undercover purchases during his 11 years as a Chicago police officer, resulting in hundreds of arrests. Later that day, Lazzara identified defendant from a photo array, by circling his picture and signing it. To the best of Lazzara's knowledge, defendant was later arrested.

¶ 8    On cross-examination, Lazzara acknowledged that, when he met defendant at the gas station, the encounter lasted "just seconds." He did not recall whether he could see defendant's arms or hands at that time, and he recalled a clothing description of the offender only from reading the documents on the day of trial. After Lazzara followed the car to 7502 Greenview and approached the passenger side, he had another encounter with defendant, during which they had a short conversation and exchanged currency for narcotics. That conversation lasted about two seconds and the transaction lasted about two seconds. During this encounter, Lazzara looked at defendant's face and noticed the tattoo on his lower right arm that said, "Glenn Riches." Lazzara did not recall whether defendant handed the narcotics with his left or right arm and did not recall the size or orientation of the tattoo, or whether defendant had any other tattoos.

¶ 9    Lazzara did not know the identity of the person who gave him the narcotics prior to the transaction. Lazzara was not aware of who owned the phone number that he called to set up the transaction, and he did not check the license plate of the car that defendant rode in. The officers on Lazzara's team did not stop defendant after the transaction. Lazzara went back to the station, where he gave a description of the offender as a black male with dreadlocks and the tattoo on the lower right arm. Lazzara did not recall whether he was in the room when the sergeant compiled photos for the photo array, and he did not know how the photos were obtained. Lazzara agreed that the person he picked out of the photo array, "actually happened to have a tattoo that said 'Glenn Riches[.]' "

¶ 10    On redirect, Lazzara stated that most of the hundreds of hand-to-hand transactions that he had taken part in lasted only a few seconds and, as a police officer, he was trained and knew he had to get a good look at the offender during those transactions. None of the officers stopped defendant on the day of the transaction because they were engaged in an ongoing narcotics investigation.

¶ 11    In response to the court's questioning, Lazzara stated that the "Glenn Riches" tattoo that he observed on the offender was not depicted in the photo that he identified. Lazzara viewed the photo array later in the afternoon on the day of the transaction.

¶ 12    On recross, Lazzara stated that he viewed the photo array four to five hours after the transaction.

¶ 13    The parties stipulated that, if called, a forensic chemist at the Illinois State Police Crime Lab would identify the item Lazzara inventoried and testify that he received it in a heat sealed condition. He performed commonly accepted tests on the item using tested, calibrated and properly

functioning equipment, and would give his expert opinion that the item tested positive for the presence of cocaine in the amount of 0.5 grams.

¶ 14 The trial court found defendant guilty of delivery of a controlled substance. The court stated that it found Lazzara credible and that his very prompt photographic identification on the same day confirmed his testimony. The court sentenced defendant to three years' imprisonment.

¶ 15 On appeal, defendant challenges the sufficiency of the evidence to sustain his conviction. Specifically, he argues that the State failed to prove beyond a reasonable doubt that he was the person who delivered cocaine to Lazzara.

¶ 16 The standard of review for claims that the evidence was insufficient to sustain a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 278-79 (2004) (emphasis in original) (citations omitted). It is up to the trier of fact to determine the witnesses' credibility, the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). All reasonable inferences must be allowed in favor of the State. *People v. White*, 2017 IL. App. (1st) 142358, ¶14; *People v. Brown*, 2013 IL 114196, ¶48; *People v. Wheeler*, 226 Ill. 2d 92, 116-17 (2007). While we will consider all of the evidence, we will not retry the defendant on appeal. *See Wheeler*, 226 Ill. 2d at 117; *People v. Evans*, 209 Ill. 2d 194, 209 (2004). Accordingly, we will not overturn a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Brown*, 2013 IL 114196, ¶48.

¶ 17    In this case, defendant contends that the evidence was insufficient to support his conviction because there was no evidence linking him to the offense, other than Officer Lazzara's identification testimony. The State has the burden of proving beyond a reasonable doubt the identity of the defendant as the person who committed the offense. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). However, as the defendant acknowledges, the testimony of a single witness' identification is sufficient to sustain a conviction if the witness had an adequate opportunity to observe the offender and the in-court identification is positive and credible. *See id.*; *People v. Loferski*, 235 Ill. App. 3d 675, 682 (1st Dist. 1992).

¶ 18    Here, the trial court specifically found Officer Lazzara credible. However, although the trial court's findings of fact are given great deference, we are not a mindless rubber-stamp. *People v. Hernandez*, 312 Ill. App. 3d 1032, 1037 (1st Dist 2000). We review Lazzara's identification testimony by considering: (1) the opportunity the witness had to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the identification confrontation, and (5) the length of time between the crime and the identification, as set forth in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). *See Slim*, 127 Ill. 2d at 307-08; *White*, 2017 Ill. App. (1st) 142358, ¶15.

¶ 19    In considering the *Biggers* factors in relation to Lazzara's identification, we conclude that they weigh in the State's favor. Stated differently, we cannot say that the trial court erred in finding that the State proved beyond a reasonable doubt that defendant was the person who tendered cocaine to Officer Lazzara. First, Lazzara had two opportunities to observe defendant during daylight hours—once at the gas station when the car defendant was in pulled up next to Lazzara's

vehicle, and again during the transaction on Greenview. Both times, Lazzara was next to the vehicle that defendant was in, on the passenger side. Lazzara testified that he got a good look at defendant's face. Although Lazzara testified that he observed defendant for only a few seconds on each occasion, this court has rejected claims that a brief observation undermines identification testimony. *See People v. Barnes*, 364 Ill. App. 3d 888, 894 (1st Dist. 2006); *see also People v. Parks*, 50 Ill. App. 3d 930, 933 (2d Dist. 1977) (stating that witness' opportunity to observe assailant for only five to ten seconds at night was a factor for the trier of fact to consider, but did not render the identification insufficient to support a guilty verdict).

¶ 20 Second, Lazzara testified that, as an officer he was trained and knew he had to get a good look at the person he was conducting a transaction with. As this court has noted, undercover officers conducting a controlled purchase or narcotics have reason to pay strong attention to the offender. *White*, 2017 Ill. App (1st) 142358, ¶17. Therefore, this factor also weighs in favor of the State.

¶ 21 Third, Lazzara testified that he described the offender as a black male with dreadlocks and a tattoo on his lower right arm that said, "Glenn Riches." Defendant calls Lazzara's description of the offender vague and generic and argues that, at trial, Lazzara could not recall the size or orientation of the tattoo or whether defendant had other tattoos. However, the third *Biggers* factor is "the accuracy of the witness' prior description of the criminal." *Slim*, 127 Ill. 2d at 308-14. In *Slim*, our Supreme Court examined this factor at length, considering discrepancies and omissions between a witness' description of the offender and the defendant's actual appearance. *See id*. at 308-11. The court in *Slim* found that the witness' failure to describe defendant's hair, clothing, presence of braces or prominence of lips went to the weight of the testimony and did not raise a

reasonable doubt of the defendant's identification or guilt. *See id.*; *see also White*, 2017 IL App (1st) 142358, ¶18 (finding generic description of black male isolated mostly to clothing that failed to mention the defendant's tattoo weighed in favor of defendant but did not render identifications unreliable even where evidence at trial revealed that defendant had a tattoo on his right forearm). The court in *Slim* noted that, even where there are discrepancies or omissions, they do not in and of themselves generate a reasonable doubt where the identification is positive, and stated that a witness' positive identification can be sufficient where a witness only provides a general description based on the total impression of the accused's appearance. *Slim*, 127 Ill. 2d at 309.

¶ 22    Here, unlike in *Slim* or *White*, the record does not show discrepancies or omissions in Lazzara's prior description of the offender. *See Slim*, 127 Ill. 2d at 308-11; *White*, 2017 IL App (1st) 142358, ¶18. There was no evidence presented at trial showing that Lazzara's description of the offender as a black male with dreadlocks and a tattoo on his lower right arm stating, "Glenn Riches" did not describe defendant. Thus, this factor weighs in favor of the State.

¶ 23    Regarding the fourth and fifth factors, Lazzara identified defendant in a photo array about four to five hours after observing him during the transaction, and nothing in the record shows any uncertainty in this, or his in-court, identification. This is similar to *People v. White*, where an officer identified the defendant in a photo array three hours after the transaction occurred and there was no evidence in the record showing any uncertainty in his identification. *See* 2017 IL App (1st) 142358, ¶ 19. Here, as in *White*, the fourth and fifth factors both weigh in favor of the State. *See id.*; *see also People v. Simmons*, 2016 IL App (1st) 131300, ¶ 97-98 (calling period of one to two weeks between witnesses' initial opportunities to view the offender and their initial identifications of the offender a "relatively short time" that weighed in favor of the State).

¶ 24    In sum, after weighing the *Biggers* factors and viewing all of the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that defendant was the person who delivered cocaine to Lazzara.

¶ 25    Defendant nevertheless argues that the evidence was insufficient to sustain his conviction because: the State did not link him to the phone number that Lazzara called to set up the controlled narcotics purchase; the State did not link him to the vehicle that the offender who tendered the narcotics to Lazzara was a passenger in; and he was not arrested at the scene of the offense. However, these arguments were presented to the trial court and are essentially attempts to reanalyze the evidence on appeal. *See Wheeler*, 226 Ill. 2d at 116. While we must consider all of the evidence on review, and not merely the evidence supporting the State's theory of the case, this does not necessitate that we search out all possible explanations consistent with innocence. *See id.*, at 117. To do so would effectively amount to a proscribed retrial of the defendant on appeal. *Id.* at 114, 117.

¶ 26    As mentioned, the trial court found Officer Lazzara credible and, as defendant acknowledges, the testimony of a single credible eyewitness is sufficient to support a conviction. *See Slim*, 127 Ill. 2d at 307; *Loferski*, 235 Ill. App. 3d at 682. We will not reverse a conviction simply because a defendant claims that a witness was not credible. *Evans*, 209 Ill. 2d at 211-212. In this case, we cannot say that Lazzara's identification of defendant was so unreliable that there exists a reasonable doubt of defendant's guilt. Accordingly, we will not disturb the trial court's finding that defendant was guilty of delivery of a controlled substance.

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.