2019 IL App (1st) 172576-U

No. 1-17-2576

SIXTH DIVISION
DECEMBER 13, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 18900 |
| | ) | |
| ERIC RODRIGUEZ, | ) | Honorable |
| | ) | Maura Slattery-Boyle, |
| Defendant-Appellant. | ) | Ursula Walowski, |
| | ) | Judges Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction and sentence for aggravated battery are affirmed where he was proven guilty beyond a reasonable doubt and where the trial court did not abuse its discretion in imposing sentence.

¶ 2    Following a bench trial, the defendant Eric Rodriguez was found guilty of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2014)) and sentenced to 10½ years' imprisonment. On appeal, the defendant argues that the State failed to prove him guilty beyond a reasonable doubt

because the testimony of the State's eyewitness was not credible. He also contends that the trial court abused its discretion in sentencing because the court misunderstood the crimes of which he was convicted. Finding no error, we affirm the judgement of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4      The defendant was charged by indictment with 11 counts of attempted first degree murder (counts 1-11), 1 count of aggravated battery (count 12), and 2 counts of aggravated discharge of a firearm (counts 13-14). The State proceeded to trial on five counts of attempted murder and one count of aggravated battery. The State did not make a formal entry of *nolle prosequi* on the remaining charges.

¶ 5      The evidence at trial revealed that Carmen Rivera, the victim in this case, lived at 3627 North Oleander Avenue in Chicago with her daughter, Manasty Mercado, and her son, Eli Mercado, Jr.  Upon arriving home the morning of April 12, 2015, she observed that the house was in disarray.  Manasty informed her that she and Eli Jr. had people over the previous night.  The defendant arrived uninvited to Manasty's gathering, along with Manasty's ex-boyfriend's mother, Migdalia, and another woman.  (Manasty knew the defendant through her ex-boyfriend, Armani. She and Armani did not end their relationship on good terms.)  Manasty told her mother that the defendant and Migdalia "put their hands" on her, and the woman who was with them flipped over a table.  The defendant punched Manasty in the face.  The defendant, Migdalia, and the other woman left the house after the police were called.

¶ 6      After Manasty relayed this information to her mother, Carmen called Migdalia.  While she was on the phone, her husband, Eli Mercado, Sr., who had arrived in the interim and been apprised of the situation, took the phone and had a conversation.  When the call ended at around 2 p.m., Eli

Sr. made another call and told someone to come to the house.  Manasty testified that her father said to the person on the phone "come to [me] like a man."

¶ 7     After overhearing that conversation, Manasty went outside to the front of the house with her little brother and sister. There, she observed the defendant, who was in the passenger seat of a black sports utility vehicle with the window rolled down, drive by the house. The defendant motioned with his arm and directed Manasty to the back of the house. Manasty went back inside the house with "the kids" and told Carmen and her father that the defendant had driven by and beckoned her out back.  Her parents, along with Eli Jr., went to the alley behind the house. She stayed inside and called the police. Shortly thereafter, Manasty heard the sound of gunshots. She ran outside and saw that Carmen's arm was bleeding. When police arrived, Manasty provided them with screen shots of the defendant from his Facebook page. Manasty later met with detectives who presented her with a photo array. She was unable to identify the defendant because she did not see anyone with a tattoo on the center of his neck.

¶ 8     For her part, Carmen testified that 15 to 20 minutes after Eli Sr.'s phone call, she was outside and saw the defendant, whom she identified in court and who she had seen twice before, drive by the house two times.  The defendant, who was wearing a black sweater, was seated in the front passenger seat of a black car.  Carmen testified that she, Eli Sr., Eli Jr., and Jesse Rivera all went to the alley behind the house. Then, about five minutes after seeing the defendant first pass by the house, Carmen saw the defendant at the "T" intersection of the alley, which was four houses away—approximately 120 to 150 feet— from where she was standing.  Nothing blocked Carmen's view of the defendant. She saw the defendant stick half of his body, from the waist up, out of the

car and point a gun at her. The defendant fired four or five times in her direction. Prior to firing, the defendant said "Nine Kings," a name of a street gang.

¶ 9    After the shooting, Carmen "was in shock" and realized she was shot in her left arm. About 10 minutes later, she ran inside the house. Paramedics arrived, and she told them that the incident was her daughter's fault for going out with Armani. She went on to say that Armani and another person "had to do with all this," but clarified that Armani was not at her house or in the alley the day of the shooting.

¶ 10    Carmen was eventually transported to a hospital for treatment, where she spoke with Chicago police detective Daniel Gillespie. After returning to her house, Carmen spoke with Chicago police detectives Reyes and Goduto, who showed her a photo array at approximately 9:10 p.m.[1] She identified the defendant in the photo array as the person who shot her that day. At trial, Carmen repeatedly denied that anybody besides the police showed her a picture of the defendant before the photo array. However, Manasty testified that she showed Carmen a picture of the defendant on Facebook after Carmen returned home from the hospital.

¶ 11    Gillespie testified that he investigated the shooting on April 12, 2015. He spoke with Carmen at the hospital and later went to her house. There, Manasty showed him the defendant's photograph from Facebook. Gillespie also obtained a photo of the defendant and compiled a photo array. The photo array was administered by Reyes and Goduto.

¶ 12    The parties stipulated that, if called by the defense, John Franta, an emergency medical technician (EMT) for the Chicago Fire Department, would testify that Carmen said to him, during

---

[1] Detectives Reyes' and Goduto's first names do not appear in the record.

her treatment in the alley, that "her daughter's ex-boyfriend and another individual known to her opened fire on her and her children."

¶ 13    The court found the defendant guilty of one count of aggravated battery (count 12) and two counts of aggravated discharge of a firearm (counts 13-14), and not guilty of attempted first degree murder. The defendant moved for a new trial, questioning the accuracy of Carmen's identification. In denying the motion, the court noted that the testimony of the witnesses "was absolutely credible."

¶ 14    At sentencing, the court heard arguments in aggravation and mitigation. In aggravation, the State pointed out the specific harm the defendant caused, other facts surrounding the case and the defendant's prior criminal history. The State also highlighted that at the time of the shooting the defendant was on bail. In mitigation, defense counsel noted the large support network surrounding the defendant, his history of employment, and his education.

¶ 15    The court sentenced the defendant to 10½ years' imprisonment to be served concurrently on counts 12-14. In announcing sentence, the court recited the defendant's lengthy criminal history, the defendant's lack of accountability, risk to the community and the particular circumstances of the case.

¶ 16    The defendant filed a motion to reconsider sentence and an amended motion for new trial. In the motion for a new trial, he informed the court that the State nol-prossed counts 13 and 14, aggravated discharge of a firearm, and argued that the court erroneously considered these counts in imposing sentence.[2] The State agreed that counts 13 and 14 were not brought forward at trial

---

[2] A different judge than the one who presided over trial and at the defendant's initial sentencing ruled on the defendant's motion to reconsider sentence and amended motion for new trial.

and therefore nol-prossed. The court entered a *nunc pro tunc* order on motion of the State to nol-pros counts 13 and 14. The court then reviewed the motion to reconsider. The court found that the trial judge had appropriately considered the aggravating and mitigating factors and stayed on the lower end of the sentencing range of 6 to 30 years. The court denied the defendant's motion to reconsider, and the defendant timely appealed.

¶ 17                                        ANALYSIS

¶ 18    We note that we have jurisdiction to review this matter, as the defendant filed a timely notice of appeal following sentencing.  Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 19    On appeal, the defendant first contends there was insufficient evidence to prove him guilty beyond a reasonable doubt. Specifically, he argues that Carmen's identification of him as the shooter was unreliable and inconsistent with her prior statements as well as the statements of another witness.

¶ 20    On a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the required elements beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. In doing so, we will not retry the defendant. *Id.*; *People v. Evans*, 209 Ill. 2d 194, 209 (2004). Indeed, as a reviewing court, we may not substitute our judgment for the fact finder's "on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). A conviction will not be reversed unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 21 Where, as here, identification is the central issue, the State has the burden to prove beyond a reasonable doubt the identity of the person accused of committing the charged offense. *People v. White*, 2017 IL App (1st) 142358, ¶ 15. A single witness's identification is sufficient to support a finding of guilt "if the witness viewed the accused under circumstances permitting a positive identification." *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Illinois courts have adopted the five-factor test used in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), in assessing identification testimony. *White*, 2017 IL App (1st) 142358, ¶ 15. The factors are:

> "(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." *Slim*, 127 Ill. 2d at 307-08.

¶ 22 Applying the *Biggers* factors here leads us to conclude that they support the accuracy of Carmen's identification of the defendant as the man who shot her. First, Carmen had ample opportunity to observe the defendant. She saw the defendant circle the house twice immediately prior to the shooting, and she had seen him on two prior occasions with her daughter. During the shooting, the defendant was approximately 120 to 150 feet away, in daylight hours, and nothing obscured Carmen's view of him. Second, Carmen exhibited a high degree of attention considering she was able to recall that the defendant said "Nine Kings" before the shooting. Moreover, the shooting itself provided sufficient reason for Carmen to intently focus on him (*People v. Davis*, 2018 IL App (1st) 152413, ¶ 56 (noting that witnesses have reason to "intently focus" even if briefly on individuals trying to shoot them)), and she was able to recall the reactions of the others

around her. Neither the third nor fourth factors are relevant to our analysis since Carmen did not provide a prior description of the offender and the record does not indicate the level of certainty with which Carmen made her identification. However, the fifth factor also supports the accuracy of the identification. The record reflects that Carmen identified the defendant from a photo array and in person at trial. She also made her original identification of the defendant from the photo array less than eight hours after the shooting. *See People v. Simmons*, 2016 IL App (1st) 131300, ¶¶ 97-98 (calling line-up identification two weeks after offense a "relatively short time" that weighed in favor of the State and noting that the supreme court has upheld identifications after delays of as much as 18 months up to two years).

¶ 23    The defendant nevertheless argues that Carmen's identification is unreliable because: (1) there was insufficient time for Carmen to observe the shooter particularly given the distance between her and the shooter; (2) she lacked composure after the shooting; (3) she told an EMT that her daughter's ex-boyfriend and another individual had shot her; and (4) Manasty tainted Carmen's identification by showing her a Facebook photo of the defendant after she returned from the hospital. The defendant maintains these details and contradictions in Carmen's testimony undermine her credibility.

¶ 24    But these alleged inconsistencies were fully explored at trial during cross-examination. It was the responsibility of the trier of fact to resolve the inconsistencies and conflicts in Carmen's testimony and determine the weight to be given the evidence in light of those conflicts. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). The court's ruling and its express finding that Carmen was a credible witness reveals that, in this case, the court resolved these inconsistencies in favor of the State. In doing so, the court "is not required to disregard inferences that flow from the

evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Alvarez*, 2012 IL App (1st) 092119, ¶ 51 (quoting *People v. McDonald*, 168 Ill. 2d 420, 447 (1995)). We will not substitute our judgment for that of the trier of fact on these matters. *Jackson*, 232 Ill. 2d at 280-81.

¶ 25    In any event, we note that this court has previously found that a few seconds viewing time may be all that is needed for a credible identification. See *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 30 (a few seconds was sufficient opportunity for the victim to observe the defendant). Additionally, this court has not set a maximum range at which a witness must observe the perpetrator in order to make a credible identification, but we have found that a witness can make a proper identification at 150 feet. *Davis*, 2018 IL App (1st) 152413, ¶¶ 54-56.

¶ 26    The defendant next argues that the trial court abused its discretion in imposing sentence because it found him guilty on charges that were nol-prossed by the State prior to trial. According to the defendant, this guilty finding caused the court to impose a higher sentence than it otherwise would have.

¶ 27    The Illinois Constitution states that both the "seriousness of the offense" and the rehabilitation of the defendant must be considered in determining a sentence. Ill. Const. 1970, art. I, § 11; *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 61. The trial court has broad discretionary powers in imposing a sentence and its decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Significantly, a sentence within statutory guidelines is presumptively proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. We will not disturb a trial court's sentencing determination absent an abuse of discretion. *People v. Jones*, 168 Ill.2d 367, 373-74 (1995).

¶ 28　　In this case, the defendant was convicted of aggravated battery, a Class X felony, punishable by a sentence of not less than 6 years and not more than 30 years. 720 ILCS 5/12-3.05(h) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). The defendant's 10½ year sentence is therefore presumptively proper as it is well within the statutory range.　See *Knox*, 2014 IL App (1st) 120349, ¶ 46.　It is the defendant's burden to make an affirmative showing that the court considered improper factors in imposing sentence. *People v. Burnette*, 325 Ill. App. 3d 792, 809 (2001).　The defendant has failed to meet this burden here.

¶ 29　　The defendant does not cite to any part of the record to show that his sentence of 10½ years' imprisonment for aggravated battery was based on the court's finding of guilt for aggravated discharge of a firearm. To the contrary, the record shows that the court considered the defendant's criminal history and the relevant circumstances surrounding the case coupled with the mitigating factors proffered by the defendant.　The defendant fired his gun multiple times in a residential neighborhood in the middle of the afternoon into a crowd of four people, injuring one. This was a serious offense deserving of serious punishment.

¶ 30　　While the court may have been laboring under the mistaken belief that the defendant was guilty of aggravated discharge of a firearm (counts the State had nol prossed), the fact remains that a different judge reviewed the sentence on the defendant's motion to reconsider after learning that the State had elected *not* to proceed to trial on those counts. That court again considered all the factors in mitigation and aggravation in light of a finding of guilt on only the count of aggravated battery and nevertheless found the sentence appropriate. Given this record, the defendant has failed to show that the court erred in imposing sentence or that his sentence is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People*

*v. Fern*, 189 Ill. 2d 48, 54 (1999). Therefore, we conclude that the trial court did not abuse its discretion and affirm the defendant's 10½-year sentence.

¶ 31                                    CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.